**STATE CORP. COMMISSION
OF KANSAS**

v.

**FEDERAL POWER COMMISSION.**

**NORTHERN NATURAL GAS CO.**

v.

**FEDERAL POWER COMMISSION.**

Nos. 14704, 14706, 14733.

United States Court of Appeals,
Eighth Circuit.

Aug. 17, 1954.

See also 8 Cir., 206 F.2d 690.

Jay Kyle, Gen. Counsel, Topeka, Kan., for State Corp. Commission of Kan.

F. Vinson Roach, Omaha, Neb., for Northern Natural Gas Co.

Rueben H. Goldberg, Washington, D. C., for Federal Power Commission.

P. L. Farnand and G. T. Mullin, Minneapolis, Minn., for Minneapolis Gas Co.

George C. Pardee, Omaha, Neb., for Metropolitan Utilities Dist. of Omaha, Neb.

Raymond A. Smith, Council Bluffs, Iowa, for Council Bluffs Gas Co.

Carl W. Cummins, St. Paul, Minn., for Northern States Power Co.

Norman H. Nitzkowski, Mankato, Minn., John W. Scott, Washington, D. C., for Minnesota Valley Natural Gas Co.

Lloyd J. Marti, Lincoln, Neb., for Central Electric & Gas Co.

Carsten L. Jacobson, Asst. City Atty., Minneapolis, Minn., for City of Minneapolis.

Marshall Hurley, St. Paul, Minn., for City of St. Paul.

Clement F. Springer and Francis T. Crowe, Chicago, Ill., for Interstate Power Co.

Hubert C. Jones, Des Moines, Iowa, for Iowa Power & Light Co. and Peoples Gas & Electric Co.

John F. Gaston, Jr., Cedar Rapids, Iowa, for Iowa Electric Light & Power Co. and Northwestern Light & Power Co.

Byron L. Sifford and Vernon Myers, Sioux City, Iowa, for Iowa Public Service Co.

Ned Willis, Perry, Iowa, for Perry Gas Co.

Arthur C. Sidner, Fremont, Neb., for Nebraska Natural Gas Co.

Clayton Kline, Topeka, Kan., for Kansas Power & Light Co.

Rodger L. Nordbye, Minneapolis, Minn., for Minnesota Natural Gas Co.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

PER CURIAM.

Northern Natural Gas Company, petitioner herein, has moved the court to withhold from distribution a portion of the funds accumulated by it during the period of one year under the stay order issued by this court on December 18, 1952, "which, when coupled with revenues impounded under Commission bond pursuant to" Commission Opinion No. 233 "will be available to reimburse" Northern "for its cost of service (including a reasonable return) after the effective date of Opinion No. 233 (June 27, 1952) to December 27, 1953, as such cost of service may be determined and fixed by order of said Commission under the provisions of the Natural Gas Act [29 U.S.C.A. § 717 et seq.]". The petitioner has also made application to the court for leave to adduce further evidence before the Federal Power Commission of Northern's actual cost of service during the period when it collected rates under the Court's stay (November 27, 1952 to December 27, 1953) and for an order di-

recting the Commission to take such evidence and to make findings of the actual cost of Northern's service based thereon, said findings together with said Commission's recommendations, if any, for the modification or setting aside of its original Opinion and Order No. 233 issued July 30, 1952, to be submitted to the court. (The motion and application are set forth in substance in the footnote.) [1]

1. The Motion To Amend Stay Order was as follows:

Comes Now, Northern Natural Gas Company, Petitioner in the above captioned cases Nos. 14,706 and 14,733, and respectfully moves that the Court amend its Stay Order, issued December 18, 1952 in the above captioned matter, by issuing an amendatory order providing, in addition to the present terms of such Stay, that out of the revenues impounded under Court bond from November 27, 1952 to December 27, 1953, by virtue of the Court staying Federal Power Commission Opinion No. 233, there be reserved a sufficient portion of such revenues which, when coupled with revenues impounded under Commission bond pursuant to said Opinion No. 233, will be available to reimburse Petitioner for its cost of service (including a reasonable return) after the effective date of Opinion No. 233 (June 27, 1952) to December 27, 1953, as such cost of service may be determined and fixed by order of said Commission under the provisions of the Natural Gas Act. In support of said Motion, Petitioner alleges and states as follows:

1. The request of Petitioner herein is equitable in nature and the Court is fully empowered under its equity powers and the specific reservations contained in its Stay Order to amend such Order, as herein requested.

2. The request herein contained is in accord with such Stay Order which provides, "the intention of the Stay Order being that no vested rights shall exist in favor of anyone to excess revenues, in case of an affirmance of the Federal Power Commission's order, except such as may ultimately and equitably be fixed by the Court."

3. Petitioner, a "Natural-gas company" within the meaning of the Natural Gas Act, section 2(6) is entitled to be reimbursed for its cost of rendering service subject to the jurisdiction of the Commission.

4. This Court, under its broad equity powers and the provisions of such Stay Order, has authority to make available sufficient of the revenues impounded under Court bond to reimburse Petitioner for its cost of rendering service, as such cost of service may be determined and fixed by order of the Commission.

5. That the action necessary for a determination of Petitioner's cost of service has already been initiated by the Federal Power Commission, the members of whose staff are currently engaged in investigating Petitioner's books and records for determination of such cost of service, and that Petitioner believes and, therefore, alleges that such investigation should be completed in the very near future.

6. Unless the accompanying motion, or similar equivalent relief, is granted, Northern will suffer grave and irreparable injury and the "end result," as between Northern and its customers, will be gross inequity.

7. A suggested form of order to accomplish the ends herein sought is attached hereto as Exhibit "A".

Wherefore, Northern Natural Gas Company prays that the Court amend its Stay Order, issued December 18, 1952 in the above captioned matter, by issuing an amendatory order providing, in addition to the present terms of such Stay, that out of the revenues impounded under this Court's bond by virtue of the Court staying Federal Power Commission Opinion No. 233, there be reserved a sufficient portion of such revenues which, coupled with revenues impounded under Commission bond pursuant to said Opinion No. 233, will be available to reimburse Petitioner for its cost of service (including a reasonable return) after the effective date of Opinion No. 233 (June 27, 1952) to December 27, 1953, as such cost of service may be determined and fixed by order of said Commission under the provisions of the Natural Gas Act.

The Application For Leave To Adduce Additional Evidence was as follows:

Comes Now, Northern Natural Gas Company, Petitioner in the above captioned cases Nos. 14,706 and 14,733 and, pursuant to the provisions of the Natural Gas Act, section 19(b), applies to the Court for leave to adduce before the Federal Power Commission, evidence of Northern's actual cost of service during the period when Northern collected rates under the Court's stay (November 27, 1952 to December 27, 1953); (On De-

The Federal Power Commission and interveners have filed resistance to Northern's motion and application and after due notice given on the motion and application, a hearing was had before the court on briefs and oral arguments at Omaha on July 13th and 14th, 1954. The court being fully advised concludes

cember 27, 1953 Petitioner ceased collecting revenues under the Court's Stay Order. This occurred by reason of the settlement of Petitioner's rate increase filing of June 26, 1953 which settlement was approved by Commission Order issued January 28, 1954 and authorizes Petitioner to collect rates from and after December 27, 1953, which produce revenues in excess of the revenues produced by the rates which were effectuated by virtue of the Court's Stay Order.); and, Northern further moves this Court for an Order directing said Commission to take such evidence; to make findings of Northern's actual cost of service based thereon; and, to submit such findings to this Court together with said Commission's recommendations, if any, for the modification or setting aside of its original Opinion and Order No. 233, issued July 30, 1952. In compliance with the Natural Gas Act, section 19(b), Northern hereinafter shows to the Court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Commission:

1. Pursuant to the provisions of the Natural Gas Act, section 4(e), Northern, on June 26, 1952, filed a motion with the Commission to effectuate the increased rates as originally filed in Docket No. G-1881, the five months statutory suspension period having expired. The Commission by Opinion and Interim Order No. 233, issued July 30, 1952, dismissed a substantial portion of the increased rates as originally filed in such Docket, thereby denying Northern the right to collect such rates, subject to refund, pending the conclusion of the proceedings. Said interim Order required Northern to file substitute reduced rates that effectuated an annual reduction of $7,601,853 below the revenues produced by Northern's increased rates as originally filed in said Docket No. G-1881. Such substitute reduced rates were filed by Northern on or about September 9, 1952, to be retroactively effective to June 27, 1952, as required by said Opinion and Order. Northern collected such reduced rates under Commission bond, subject to refund, from June 27, 1952 to November 27, 1952.

2. Northern filed with the Commission a Petition for Rehearing of Opinion and interim Order No. 233, which was denied and, thereafter, on November 7, 1952, Northern filed in this Court a Petition for review. This Court, pursuant to a Petition for Stay filed by Northern, stayed said Opinion and Order effective November 27, 1952 pending judicial review. Such stay, as continued in effect by further Order of the Court dated September 15, 1953, enabled Northern to collect the revenues produced by its increased rates as originally filed in said Docket No. G-1881, from November 27, 1952 to December 27, 1953. On July 20, 1953 this Court affirmed Opinion and interim Order No. 233 but, pursuant to Motion of Northern, stayed the issuance of the Mandate pending the filing of a Petition for Certiorari in the United States Supreme Court which is presently pending before such Court on Petition for Rehearing filed by Northern on January 16, 1954.

3. On February 19, 1954, Northern filed with this Court a "Motion to Amend Stay Order," wherein it seeks to be reimbursed for its cost of service—as such cost is determined by the Commission—from revenues produced by the increased rates as originally filed in Docket No. G-1881, which revenues were collected pursuant to this Court's stay of Opinion and Order No. 233. This Application is complementary to said "Motion to Amend Stay Order."

4. The Natural Gas Act, section 19(b) [15 U.S.C. 717r(b)] provides in pertinent part as follows:

"If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which if supported by substantial evidence, shall be conclusive, and its recommendations, if any, for the modification or setting aside of the original order."

and determines that the motion of Northern Natural Gas Company filed February 20, 1954 to Amend Stay Order and its Application filed March 19, 1954 for Leave to Adduce Additional Evidence be and the same are hereby denied.

### Opinion.

The record shows that during the pendency of proceedings before the Federal Power Commission with respect to two rate increase proposals filed by Northern certain issues became clearly defined, were tried out and were decided and disposition made in respect to them by the Commission in its Opinions Nos. 228 and 228A and Orders issued June 11, 1952 and September 25, 1952. The Commission determined that certain defined elements of Northern's costs relied on by Northern in its proposed raise of rates did not support the raise. The

Opinions and Orders were affirmed in all respects by this court with the exception of the 5½% rate of return, which issue was remanded by this court to the Commission for further findings. Northern Natural Gas Company v. Federal Power Commission, 8 Cir., 206 F.2d 690.

While the first and second rate increase proceedings were pending before the Commission, Northern filed a third rate increase proposal predicated in substantial measure upon the same contentions put in issue, contested, and decided by the Commission in Opinions Nos. 228 and 228A and Orders issued June 11, 1952 and September 25, 1952. By the third rate increase filing Northern proposed to increase its rates by approximately $10,600,000, based upon a 6½% rate of return, over and above Northern's first and second rate increase proposals. Following hearings on the third rate in-

5. At the hearing in Docket No. G-1881, held during March, 1952, the evidence adduced by Northern in support of its increased rates as originally filed in such Docket, related to 1952 as the test year and was of necessity based upon estimates. Opinion and interim Order No. 233, to the extent that it dismissed a substantial portion of Northern's claim for annual revenues, was predicated on such estimates. There is now available for the first time evidence of actual cost of service for the period of time during which Opinion and interim Order No. 233 was effective. Northern here seeks leave to adduce such evidence before the Commission.

6. The evidence which Northern seeks leave to adduce is material since it will show Northern's actual cost of service, including a reasonable return, and will further show that the revenues produced by the substitute reduced rates, which Northern was required to file by Opinion and interim Order No. 233, failed to reimburse Northern for such actual cost of service. Such evidence and the Commission's findings thereon, will enable this Court to view the "end result" of such Opinion and Order and to consider the relief requested in the aforesaid "Motion to Amend Stay Order" in the light of Northern's actual experience.

7. There were reasonable grounds for failure to adduce such evidence in the proceeding before the Commission in

Docket No. G-1881, since during the only hearing thus far held (in March, 1952), evidence of actual cost of service was not available and Northern, in contesting Opinion and interim Order No. 233—both before the Commission and this Court—was compelled to rely on estimates of cost of service rather than the actual experience now available.

8. This Application for leave to adduce additional evidence is particularly appropriate in this case, since Opinion and Order No. 233 was an interim order, issued prior to the conclusion of the hearing in a proceeding before the Commission which is not yet concluded, but is in recess.

Wherefore, Northern Natural Gas Company prays that this Application for leave to adduce before the Federal Power Commission, evidence of Northern's actual cost of service during the period when Northern collected rates under the Court's stay (November 27, 1952 to December 27, 1953) be granted; and, Northern further prays that this Court issue an Order directing said Commission to take such evidence; to make findings of Northern's actual cost of service based thereon; and, to submit such findings to this Court, together with said Commission's recommendations, if any, for the modification or setting aside of its original Opinion and Order No. 233 issued July 30, 1952.

crease proposal, at which Northern presented evidence in justification of the proposed rate increase, the Commission's staff filed a motion to dismiss Northern's third rate increase proposal to the extent that the issues involved in it had just been decided by the Commission adversely to Northern's contentions. Accepting Northern's own evidence for purposes of the motion, including its claim for a 6½% rate of return, it appeared that the minimum amount of revenue involved in the issues to which the motion was addressed was $7,601,853. (The remand on rate of return in no way affects the funds accumulated under the stay, since such funds are associated with the third rate increase and are therefore all based on a 6½% rate of return.) Although Northern contested the motion, it did not show at the hearing that there was any new evidence or further condition affecting the $7,601,853 increase that had not already been submitted to and passed on by the Commission. The Commission, after oral argument, by Opinion No. 233 and order issued July 30, 1952, granted the motion to dismiss $7,601,853 of the third rate increase proposal. The opinion and order were interim proceedings and the case as docketed remains pending and undisposed of before the Commission.

Northern was directed by the Commission in Opinion No. 233 and order issued July 30, 1952, to file substitute rate schedules permitting the continued collection from June 27, 1952, subject to refund, of an increase in rates of approximately $3,000,000—the amount which was not disposed of by the grant of the motion to dismiss. The required rate schedules reflecting the increase of approximately $3,000,000 were filed and were accepted by the Commission. While there have been no further proceedings before the Commission with respect to this rate increase proposal, Northern collected the increase subject to refund until December 27, 1953. At that time, pursuant to Commission order issued January 28, 1954, approving a settlement of Northern's fourth rate increase proposal, Northern began the collection of rates in excess of those filed pursuant to Opinion No. 233 and order issued July 30, 1952.

In the meantime, the dismissal of the $7,601,853 was affirmed by this Court in Northern Natural Gas Company v. Federal Power Commission, supra. As this Court said in that case, 206 F.2d 716:

"* * * It is evident from the record therefore, that if the Commission had allowed the $7,601,853 items to remain pending in Northern's third rate increase schedule the Opinions 228 and 228A and Orders disposing of the same items would have been practically nullified. Northern's proposal was to continue indefinitely to charge its customers on the basis of its disallowed increase of $7,601,853, regardless of adverse decision upon it by the Commission. Its position for aught that appears would justify it continuing the same course, notwithstanding judicial affirmance of the Commission. We do not think the statute can be construed to permit such a course of procedure by Northern."

Northern's claim now is that the $3,000,000 which it has collected, subject to refund, from June 27, 1952 to December 27, 1953, is insufficient to cover the increased costs (including fair return) which it has actually experienced in rendering services to its customers. It contends that the deficiency should be made up by awarding to it a portion of the funds accumulated under the stay order, not exceeding $2,900,000; the Commission to decide ultimately what portion of the $2,900,000 is required to reimburse Northern for all of its actual cost of service which Northern alleges has occurred during the period.

Whether Northern's allegations are true regarding the insufficiency of the $3,000,000 increase to cover the actual cost of service for the one year period now in question has not been positively

ascertained. It is stated that the company accountants place the amount of actual insufficiency at $2,900,000, and that accountants from the Commission's staff have been at work on the books of the company to make the determination for several months and have apparently brought their task to or near completion. There is no positive denial of Northern's claim that the revenue received by it for the period in question was insufficient to cover the cost of services including a reasonable return.

■ The court now holds that the Stay Order of this court does not contemplate or provide that any part of the funds to be accumulated by Northern while said order remained effective should inure to Northern in the event of an affirmance of the Commission's decision and order. Although the intention of the Stay Order, as stated therein, was that "no vested rights shall exist in favor of any one to the excess revenues in case of an affirmance of the Federal Power Commission's order except such as may ultimately and equitably be fixed by the Court", Northern was firmly bound by the condition of the Stay Order that it would "refund to the utility distributing companies any portion of the revenues collected by virtue of this stay and found by this court upon judicial review to be not justified,". The judicial review that was meant was our review of the decision and order of the Commission, and upon our affirmance of said decision and order the condition became absolute. The Motion and Application of Northern are in conflict with the terms and intention of the Stay Order.

■ The court is of the opinion that the action sought by Northern is not in accord with the court's responsibility under the Stay Order. As stated by the Supreme Court in Interstate Natural Gas Company v. Federal Power Commission, 336 U.S. 577, 584, 69 S.Ct. 775, 779, 93 L.Ed. 895,

"the task of the federal court in distributing the fund accumulated by virtue of its stay order is to undo the wrong which its process caused. The basic problem, therefore, is not to fix rates but to determine who suffered a loss as a result of the court's action in granting the stay. * * * "

As the stay in this case permitted Northern to override the Commission's order and to collect from its customers the fund which it could not otherwise have collected, it devolves upon the court on affirmance of the Commission to order Northern to surrender the fund up to those other persons entitled to receive it. As this court said in Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 8 Cir., 179 F.2d 896, 902, "A utility challenging such an order, when it applies to the reviewing court for a stay of the effective date and asks that rates found to be excessive be kept in effect, takes a calculated risk." It must be held when it loses, to the conditions imposed when the stay was granted.

It also appears to the court that to accord to Northern the relief it now seeks would to a large extent nullify the decision of this court which affirmed the Commission's Opinion No. 233 and Order issued July 30, 1952. The Commission disallowed the identified items of costs aggregating $7,601,853 of the increase in rates applied for by Northern and this court affirmed. If Northern were now permitted to retain a part of the fund it is obvious that to that extent this court's decision would be nullified.

It is contended against Northern that if it developed in actual operation that the rates collected by it during the period in question were insufficient and confiscatory, that result was not brought about by any error of the Commission or the court in the disallowance of the items making up the $7,601,853. It is said the fault was Northern's own in failing to make timely filing for proper rate increase and that the request which Northern now presents is in conflict with the limitations of Sections 4(e) and 5(a) of the Act. We sustain the contention.

■ Under Section 4(e) the Commission may order a refund with interest of rates or charges which it has decided not to be justified but its power to fix rates is prospective only and those it fixes are applicable only to the future. As was said in Hope Natural Gas Company v. Federal Power Commission, 4 Cir., 196 F.2d 803, 805,

> "The Commission's power to fix rates under section 5(a) is prospective only, and rates so fixed are applicable only to the future. * * * The Commission is given no power to enter reparation orders with respect to rates. Its power over rates, which is prescribed by section 5(a) * * * is to determine after a hearing whether existing rates are unjust, unreasonable, discriminatory or preferential, and, if so, to prescribe the just and reasonable rate 'to be thereafter observed and in force'. If it suspends a proposed new rate under section 4(e), and enters upon a hearing pursuant to that section, it can make only such orders with respect thereto 'as would be proper in a proceeding initiated after it had become effective', i. e. a proceeding under section 5(a)."

■ As said by the Supreme Court in Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 618, 64 S.Ct. 281, 295, 88 L.Ed. 333, "It is conceded that under the Act the Commission has no power to make reparation orders. And its power to fix rates admittedly is limited to those 'to be thereafter observed and in force.'"

Section 5(a) also limits the power of the Commission by this provision:

> "That the Commission shall have no power to order any increase in any rate contained in the currently effective schedule of such natural gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural gas company".

We think the motion of Northern is in conflict with both the above limitations upon the powers of the Commission.

To support its Application for Leave to Adduce Evidence, Northern relies heavily upon Section 19(b) of the Natural Gas Act, 52 Stat. 821, 15 U.S. C.A. § 717r, which provides:

> "* * * * The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U.S.C., title 28, secs. 346 and 347)."

It is Northern's position that the statute 19(b), empowers the court and the Commission to save Northern from loss by reason of the alleged insufficiency of the rates collected by it during the year that is in question here. Since the year has passed the effect of the rates that were collected can be demonstrated, whereas the action of the Commission

and the company in establishing the rates was necessarily based on forecast and anticipation of what rates would produce in the future. In substance, the contention for Northern is that the quoted statute, 19(b) provides means to compare the realizations from established rates with the expectations on which the rates were based and to accord exact justice to rate payers on the one hand, and to utilities on the other, by appropriate apportioning of the fund which is on hand.

It cannot be denied that the wording of the statute read by itself appears to afford a measure of support to Northern's position but it is elaborately argued in the opposing briefs that the statute has no such intent or purpose. It is pointed out that in rate regulation such as is here involved, the Commission's legislative fixing of rates must necessarily relate to the future and the Commission lacks power to grant reparation where a rate has proved on application to be confiscatory. The court also is limited strictly to the exercise of judicial power and has no power to fix rates or to accord reparation on account of insufficiency of rates in the past. In the process of rate regulation, therefore, the utility must propose a change in the rates under which it is operating and the Commission allows or disallows the change. It is the allowance or disallowance that is subject to review by the court. There is no place in the proceeding for either the Commission or the court to accord reparation.

Accordingly, it is contended that it is the intent of Section 19(b) that the procedure provided in it for adducing additional evidence refers only to proceedings taken *before* review of the order of the Commission. It is also insisted that the newly discovered evidence that may be adduced under the section can only be evidence that was in existence and could be considered by the Commission in passing on the issues before it. Such intendment must be ascribed to the provisions of the section in the sequence in which they are found in it in order to reconcile them with the concluding provision that "The judgment and decree of the court * * * shall be final". If Section 19(b) were construed to permit the adducing of additional evidence on the merits of an order after review thereof by the Court of Appeals such construction would be in conflict with the provision which gives finality to the judgment of the court.

■ We conclude that to grant the leave to adduce evidence requested by Northern would amount in effect to the initiation of proceedings for recovery of reparation by Northern for past insufficiency of rates. That such is manifestly the purpose of the desired comparison between the expected and the actual realized proceeds of the rates that were established. That such recovery of reparation is not sanctioned by Section 19(b) and is contrary to well settled law. Interstate Natural Gas Company v. Federal Power Commission, supra; Federal Power Commission v. Hope Natural Gas Co., supra.

Motion and Application to Adduce Evidence denied.