**INDIANA & MICHIGAN ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**Richmond Power and Light of the City of Richmond, Indiana, et al., Intervenors.**

**No. 72–2168.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 9, 1974.

Decided Feb. 14, 1974.

On Rehearing Aug. 14, 1974.

Peter J. Schlesinger, New York City, for petitioner.

John Staffier, Atty., F. P. C., for respondent. Leo E. Forquer, Gen. Counsel, George W. McHenry, Jr., Acting Sol., and Platt W. Davis, III, Atty., F. P. C., were on the brief for respondent.

George E. Morrow, Memphis, Tenn., for intervenor, Indiana and Michigan Municipal Distributor Assn.

George Spiegel and Sandra J. Strebel, Washington, D. C., were on the brief for

intervenor, Richmond Power and Light of the City of Richmond, Ind.

Wallace L. Duncan, Washington, D. C., was on the brief for intervenor, Anderson Power and Light of the City of Anderson, Ind. Frederick D. Palmer, Washington, D. C., also entered an appearance for intervenor Anderson Power and Light.

Before BAZELON, Chief Judge, and ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Indiana & Michigan Electric Company (hereinafter I&M) filed proposed changes in its tariff schedule with the Federal Power Commission on 13 June 1972. By letter of 3 July 1972, the Secretary of the Commission acknowledged I&M's filing and advised the company that "[t]he earliest effective date for the increase consistent with [Section 35.13(b)(4)(i)] of the Regulations would be August 13, 1972."[1] This section of the Commission's regulations [2] requires that, whenever a filing calls for a rate increase, certain cost-of-service data and a summary of the proposed rates be filed 60 days prior to the date the rates are to take effect. On 18 July 1972 I&M applied to the Commission for an order making its new rate schedule effective as of 14 July, or 31 days after the date on which I&M had previously filed. On 11 August 1972 the Commission accepted I&M's rates for filing but designated 13 August as their effective date; it then suspended their use for five months thereafter, or until 13 January 1973.[3] By order dated 6 October 1972 the Commission denied I&M's application for rehearing.[4]

---

1. Joint App. at 162.

2. 18 C.F.R. § 35.13(b)(4)(i) (1973):

Except as provided in subdivision (ii) of this subparagraph, if the rate schedule provides for an increased rate, then 60 days prior to the date that such changed rate is proposed to become effective the filing public utility shall submit a statement showing its cost of the service to be supplied under the new rate schedule according to supporting statements A through O as described below. Simultaneously, the public utility shall submit the material on sales and · revenues described in paragraph (a) of this section and, unless the rate schedule containing the proposed increased rate is likewise simultaneously filed, a summary statement of such proposed increased rate: *Provided, however,* That the submittal of such summary statement of the rate schedule shall not be in lieu of the rate schedule as required to be filed with the Commission pursuant to the regulations in this part.

Supporting statements A through O specify filing of the following data: balance sheet, income statements, earned surplus statement, cost of plant, accumulated depreciation, average working capital, rate of return, debt capital, operating expenses, depreciation expense, income taxes, other taxes, overall cost of service, allocated cost of service, comparison of cost of service, and "fuel adjustment factor."

In addition, 18 C.F.R. § 35.13(b)(5) (1973) provides:

A utility filing for an increase in rates and charges shall be prepared to go forward at a hearing on reasonable notice on the data which have been submitted and sustain the burden of proof, imposed by the Federal Power Act, of establishing that its proposed charges are just and reasonable and not unduly discriminatory or preferential or otherwise unlawful within the meaning of the Act. The Commission is desirous of avoiding delay in processing rate filings. To this end, if the rate schedule provides for an increase in rate which exceeds $30,000 in revenues for the test period, the filing utility shall submit with its rate increase filing 60 days prior to the proposed effective date of such increased rates, testimony and exhibits of such composition, scope and format that they would serve as the company's case-in-chief in the event the matter is set for hearing. In addition to whatever material the utility chooses to submit as part of its case, except for increases resulting from changes made in fuel clauses and increases of rates comprising an integral part of coordination and interchange arrangements in the nature of power pooling transactions, the exhibits shall include full cost of service data, as identified in subparagraph (4)(iv) of this paragraph, statements A through O, and the accompanying testimony should include an explanation of these exhibits.

3. Indiana & Michigan Electric Co., F.P.C. Docket No. E–7740, Joint App. at 158.

4. Joint App. at 196. Commissioner Moody filed a dissenting view.

I&M's petition for review of the Commission's order was originally consolidated with petitions by two of I&M's customers, Richmond Power and Light and Anderson Power and Light. On 25 May 1973 this court held that I&M's rate filing was unlawful with respect to Richmond and Anderson because it violated the terms of their contracts with I&M.[5] However, since the parties here have represented to the court that I&M's contract with at least one of its other 22 customers[6] is different from the Richmond and Anderson contracts, I&M's petition to have the effective date of its new rate schedule retroactively altered to 14 July 1972 remains viable.[7]

█ Because the Commission lacked statutory authority to delay the effective date of I&M's filing until 13 August 1972 and to suspend the new rates until 13 January 1973, we vacate the Commission's order of 11 August 1972 and remand to the Commission with instructions that I&M's 13 June rate filing be given effect as of 14 July 1972.[8]

## I. JURISDICTION OF THE COURT TO CONSIDER THE VALIDITY OF THE COMMISSION'S 60-DAY REGULATION

The liminal question here is whether this court can, consistent with section 313(b) of the Federal Power Act, consider I&M's contention that the Commission's 60-day prefiling regulation is invalid. Section 313(b) provides, in relevant part: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."[9]

█ While I&M did not expressly raise the legality of the 60-day regulation in its application for rehearing, it did challenge the Commission's statutory authority to set an effective date 60 days after I&M's filing.[10] The Commission characterized I&M's position in seeking a rehearing as follows: "I&M asserts that the Commission has no authority to require a notice in excess of the thirty days specified in Section 205(d) of the Federal Power Act."[11] Apparently perceiving I&M's position as a challenge to the 60-day regulation, the Commission devoted two of the five pages of its order denying rehearing to an attempted justification of the regulation.[12] Commissioner Moody joined issue with the majority and attacked the validity of the regulation in his dissent.[13] Clearly, then, I&M brought sufficient attention to the issue to stimulate the Commission's consideration of it.

---

5. Richmond Power & Light v. FPC, 156 U.S.App.D.C. 315, 481 F.2d 490 and Anderson Power & Light v. FPC, 156 U.S.App.D.C. 315, 481 F.2d 490, cert. denied, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973).

6. Thirteen of these customers are affiliated in the Indiana and Michigan Municipal Distributors Association, an intervenor in this case. Eight others are rural electric cooperatives.

7. Counsel for I&M informed the court at oral argument that the city of Auburn, Indiana has the same contract with I&M as Richmond and Anderson. Therefore, the Commission has declared I&M's filing ineffective as to Auburn. The court will not in the context of this case attempt to determine to which of I&M's customers the new rate schedule can lawfully apply. We leave such determinations to the Commission, whose orders can then be brought to this court by aggrieved parties through normal review procedures.

8. This will involve collection by I&M from its customers of the difference between the increased rates and the rates actually charged for the six-month period from 14 July 1972 to 13 January 1973. There is precedent in this circuit for ordering retroactive rate adjustments. See Tennessee Valley Municipal Gas Ass'n v. FPC, 152 U.S.App.D.C. 298, 470 F.2d 446 (1972), a case that arose under the Natural Gas Act, 15 U.S.C. § 717 et seq. (1970).

9. 16 U.S.C. § 825l(b) (1970).

10. Joint App. at 169.

11. Joint App. at 198.

12. Joint App. at 198–99.

13. Joint App. at 203.

The rationale of the requirement that an aggrieved party exhaust its administrative remedies, as provided by section 313 of the Federal Power Act, is " 'that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has an opportunity for correction . . . .' " [14] I&M gave the Commission an opportunity to correct its alleged error in setting the effective date of I&M's rates. Furthermore, I&M suggested the possibility that the 60-day regulation is invalid by inviting the Commission to construe the regulation in a manner "compatible with the Commission's statutory authority."[15] The Commission declined to correct its alleged error and explicitly defended the validity of its regulation. Thus, I&M should be permitted to assert the regulation's invalidity in this court.

## II. THE COMMISSION'S 60-DAY PREFILING REGULATION

The Commission delayed the effective date of I&M's rate filing pursuant to section 35.13(b)(4)(i) of its regulations.[16] This section requires that if a proposed rate schedule calls for increased rates, the utility must file with the Commission "a statement showing its cost of the service to be supplied under the new rate schedule," "a summary statement of [the] proposed increased rate," and certain material on sales and revenue under the old rates and the proposed rates, all "60 days prior to the date that such changed rate is proposed to become effective." [17] Much of the data required presupposes the existence of a completed rate schedule. Obviously, a "summary statement of [the] proposed increased rate" cannot be filed unless the thing to be summarized, the rate schedule itself, has been prepared. Included in the cost-of-service items required are "the percentage rate of return claimed," [18] "the maximum demands of the service under the proposed rate schedules," [19] and "revenues under the proposed rates." [20] Accurate calculation of these items would be difficult, if not impossible, in the absence of a detailed schedule of the proposed rates. Similarly, a detailed schedule is a prerequisite to calculation of "[a] statement comparing sales and services and revenues therefrom . . . under both the rate schedule proposed to be superseded or supplemented and the proposed changed rate schedule." [21] Finally, section 35.13(b)(5) further requires that "the filing utility shall submit with its rate increase filing 60 days prior to the proposed effective date of such increased rates, testimony and exhibits of such composition, scope and format that they would serve as the company's case-in-chief in the event the matter is set for hearing."[22] Again, preparation of such information depends upon the existence of the completed rate schedule.

It seems clear, then, that in order to comply with the requirements of section 35.13(b), a utility must be prepared to make a complete filing of its new rate schedule. Thus, the practical effect of the section is to impose a *de facto* 60-day notice requirement on utilities seeking to increase their rates. Such a requirement contravenes the

14. FPC v. Colorado Interstate Gas Co., 348 U.S. 492, 500, 75 S.Ct. 467, 472, 99 L.Ed. 583 (1955), *quoting* United States v. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

15. Application for Rehearing of Indiana & Michigan Electric Co., F.P.C. Docket No. E–7740, Joint App. at 174.

16. 18 C.F.R. § 35.13(b)(4)(i) (1973), set out in note 2 *supra.*

17. *Ibid.*

18. *Ibid.* (Statement G).

19. *Ibid.* (Statement M (3)).

20. *Ibid.* (Statement N).

21. 18 C.F.R. § 35.13(b)(1) (1973). Section 35.13(b)(4)(i) refers to filing of "material on sales and revenue described in paragraph (a) of this section." The reference to paragraph (a) is apparently an error since paragraph (a) says nothing about material on sales and revenue.

22. 18 C.F.R. § 35.13(b)(5) (1973), set out in full in note 2 *supra.*

terms of section 205(d) of the Federal Power Act, which provides:

> Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.[23]

The Supreme Court has interpreted this language to create not only a *minimum notice period* for the utility's customers and the Commission, but also a *maximum waiting period for the filing utility*. In United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division,[24] the Court construed section 4(d) of the Natural Gas Act,[25] whose language is virtually identical to that in section 205(d) of the Federal Power Act, as providing for "the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review."[26] Thirty days is the maximum a utility can be compelled to wait from the time it files its rate changes until the date the changes take effect unless the Commission properly exercises its suspension power. Under the Commission's regulations, a utility must make a *de facto* rate filing 60 days in advance of the effective date. Therefore, the regulations unlawfully extend the statutory waiting period for utilities by 30 days.

The Commission asserts that the 60-day prefiling requirement of section 35.13(b)(4)(i) is necessary to "the proper exercise of its ratemaking authority under the Federal Power Act."[27] To exercise its authority properly, the Commission must evaluate in each case the advisability of suspending the rate filing pending full hearings on the reasonableness of the proposed rates. The Commission argues that "[t]he difficulty of such evaluations often requires more time than the 30 days to which I&M would restrict the Commission."[28] This statement fixes responsibility for the 30-day "restriction" with the wrong party, for it is Congress that specified 30 days from the filing date as providing for "the earliest effectuation of contractually authorized or otherwise permissible rate changes *consistent with appropriate Commission review*."[29] If the Commission cannot properly exercise its ratemaking authority within the 30-day time frame prescribed by section 205(d), it should address its grievance to Congress, not to the judiciary.

The result we reach here is not foreclosed by this court's decision in Municipal Light Boards v. FPC.[30] As Commissioner Moody pointed out in his dissent to the Commission's denial of I&M's application for rehearing, the validity of section 35.13(b) of the Commission's regulations was not really in question in *Municipal Light Boards*.[31] The parties in that case merely assumed the provi-

23. 16 U.S.C. § 824d(d) (1970).

24. 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958):

25. 15 U.S.C. § 717c(d) (1970).

26. 358 U.S. at 114, 79 S.Ct. at 200.

27. Brief for Respondent at 25.

28. *Id.* at 26.

29. United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., 358 U.S. 103, 114, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958) (emphasis supplied).

30. 146 U.S.App.D.C. 294, 450 F.2d 1341 (1971).

31. Joint App. at 203.

sion's validity and contested the issue of whether the Commission could *waive* its own regulation by permitting a *less-than-60-day* waiting period. Consequently, we properly expressed no view on a possible issue never raised by any party, *i.e.*, whether promulgation of the regulation was within the Commission's statutory authority.

█ Under section 205(d) of the Federal Power Act, I&M was entitled to an effective date of 14 July 1972 for the rate schedule it filed on 13 June. The Commission therefore acted unlawfully by delaying the effective date until 13 August.[32]

## III. THE FIVE-MONTH SUSPENSION OF I&M'S RATES

█ Section 205(e) of the Federal Power Act empowers the Commission to hold hearings on the lawfulness of a proposed rate schedule and, pending such hearings, to suspend use of the schedule for no longer than five months "beyond the time when it would otherwise go into effect."[33] The Commission recognized in its order denying rehearing that it "does not have statutory authority to issue a suspension order after a proper proposed effective date."[34] Commissioner Moody seconded this observation in his dissent:

Once proposed rates have become effective this Commission is powerless to suspend the effectiveness of, or otherwise modify, those rates under § 205 of the Federal Power Act. Our only recourse is to institute a proceeding under § 206(a) of the Act and after hearing determine just and reasonable rates to be thereafter observed and in force.[35]

32. The Commission's staff reached this conclusion in a letter to the Commission captioned "Commission Staff Response to Application of Indiana & Michigan Electric Company" and dated 28 July 1972. The letter stated:

In I & M's case, if five months' suspension is ordered and the 60-day rule is invoked, the proposed rates would not go into effect until six months after the proposed effective date. If the rate changes are accepted for filing without suspension, the effective date would be 60 days after proposed effective date. It may be observed further that the Commission's Regulations Under the Natural Gas Act do not prescribe a 60-day filing requirement and that the same threshold decision as to whether to order an investigation and hearing, or a suspension, or both, must be made. Since both Section 4(d) of the Natural Gas Act and Section 205(d) of the Federal Power Act require only 30 days' notice of rate changes, the staff respectfully submits that it would be inappropriate to require more of I & M.

Joint App. at 87.

33. 16 U.S.C. § 824d(e) (1970).

34. Joint App. at 200. A similar recognition occurred in Central Maine Power Co., F.P.C. Docket Nos. E–7824 and E–8038 (8 June 1973), in which the Commission stated:

With respect to the request for suspension of Central Maine's proposed amendment and for refund protection thereunder, we find that the proposed amendment became effective by operation of law on March 16, 1973, thirty days after filing and prior to the issuance of the Commission's order on April 10, 1973. We are without authority under the Federal Power Act to rescind or suspend the effectiveness of the proposed amendment.

*See also* Phillips Petroleum Co. v. FPC, 227 F.2d 470 (10th Cir. 1955), cert. denied, 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 868 (1956).

It is to be observed that I & M's application of 18 July 1972, asking for a Commission order making the new rate schedule effective retroactively as of 14 July, would possibly have permitted the Commission to issue a suspension order for five months from the valid effective date of 14 July 1972. At least, it is clear that I & M would not have been in a position to challenge such an order as it has now, and that I & M was not seeking a procedural gimmick which would have resulted, as now has occurred, in voiding the Commission's five-month suspension order. However we do not reach the question suggested by this discussion since the Commission has never asserted that I & M's 18 July application for a 14 July effective date gave the Commission jurisdiction to suspend I & M's rates retroactively from 14 July; rather, the Commission has been consistent in contending that 13 August was the effective date and that the 11 August suspension was therefore valid.

35. Joint App. at 202. Section 206(a) of the Act, 16 U.S.C. § 824e(a) (1970), provides:

Whenever the Commission, after a hearing had upon its own motion or upon com-

Since we hold that the lawful effective date of I&M's rate filing was 14 July 1972, the Commission had no authority to suspend use of the new rate schedule on 11 August 1972. Therefore, the Commission's suspension order of that date must be vacated.

## IV. CONCLUSION

The Commission has exceeded its statutory authority by delaying the effective date of I&M's rate filings beyond the 30 days prescribed by section 205(d) of the Federal Power Act. Therefore, we order that the effective date of I&M's filing be changed retroactively to 14 July 1972. It inevitably follows that the Commission's 11 August suspension order was *ultra vires* and must be invalidated. The orders here in issue are vacated and the case is remanded for implementation of this opinion.

Vacated and Remanded.

### ON PETITIONS FOR RE-HEARING

PER CURIAM.
#### ORDER

On consideration of the petitions for rehearing, it is ordered by the Court that the petitions for rehearing are granted and the opinion filed on 14 February 1974 is modified in the manner set out in the third paragraph of the opinion of this Court filed herein this date.

WILKEY, Circuit Judge:

The Commission, with the support of intervenors, has filed a petition for rehearing in which it requests that we modify our main opinion of 14 February

1974 by eliminating therefrom our holdings: (1) that the Commission's five-month suspension of the rates filed by Indiana & Michigan Electric Co. (I&M) must be vacated; and (2) that I&M is entitled to collect from its customers the difference between its filed rates, which now must be deemed lawful from their effective date, and the rates actually charged for the six-month period from 14 July 1972 to 13 January 1973.

In our main opinion we explained in Parts III and IV why under section 205 of the Federal Power Act the Commission does not have authority to suspend filed rates after a proper proposed effective date, a conclusion with which both majority and dissenting members of the Commission agreed. Since we have held that the effective date was 14 July 1972, the Commission suspension order of 11 August 1972 could have had no effect. It has been forcefully argued to us that, while this is statutorily correct, yet great inequities are likely to result. Even though the Commission is statutorily powerless to correct these inequities, we are urged to exercise our equity powers as a court to mitigate these hardships, or at least place the Commission in such posture as to be able to do so on the basis of evidence and findings later to be heard and made on the justness and reasonableness of I&M rates.

After scrutinizing the various memoranda submitted in connection with this petition,[1] we have decided to adhere to our holding that the Commission exceeded its authority when it suspended

---

plaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.

1. Richmond Power and Light and Anderson Power and Light filed memoranda in support of the Commission's petition. The Indiana and Michigan Municipal Distributors Association (IMMDA) and the City of Auburn, Indiana, a member of the IMMDA, submitted separate petitions for rehearing. In addition, the IMMDA filed a suggestion for rehearing *en banc*. I & M filed a reply memorandum.

I&M's rates for five months. However, we deem it appropriate to exercise our equity powers and modify our earlier order in the following manner:

1. I&M may not collect retroactive rate increases for the five-month period from the effective date of its rate filing, 14 July 1972, through 13 December 1972.

2. I&M may collect the difference between its old and new rates for the period from 14 December 1972 through 13 January 1973.

3. Should the Commission determine during the course of its current hearings that I&M's filed rates are unjust or unreasonable, it may order I&M to refund the amounts collected after 13 December 1972 in excess of the just and reasonable rates.

I. *Equitable Factors*

Under our original order, I&M's customers would be obligated to pay retroactive rate increases for the five-month period during which the Commission's unlawful suspension order was in effect. This would create considerable hardship for I&M's customers, for, in reliance on the Commission's suspension order, they failed to seek increases in their own rates to offset I&M's increased charges. Since I&M's customers are precluded by federal law[2] and the relevant state statutes[3] from retroactively raising their rates, our original order would force them to absorb out of their own current assets the five months of retrospective increases in I&M's rates. These substantial amounts[4] would impose a significant burden on the finances of I&M's customers.[5]

In addition, I&M's customers have been paying the higher rates provided for by I&M's new tariff schedule since 13 January 1973. Those rates are now subject to scrutiny in Commission hearings to determine whether they are just and reasonable. Our main opinion would deprive the Commission of authority to order refunds by I&M to its customers in the event the Commission finds that some portion of I&M's increases are unjustified. The Commission's power to order refunds arises from section 205(e)

2. *See* FPC v. Tennessee Gas Transmission Co., 371 U.S. 145, 152–153, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962); State Corp. Comm'n v. FPC, 215 F.2d 176, 184 (8th Cir. 1954). These cases interpreted section 4 of the Natural Gas Act, 15 U.S.C. § 717c (1970), which is virtually identical to section 205 of the Federal Power Act, 16 U.S.C. § 824d (1970).

3. *See* Ind.Stat.Ann. § 8–1–2–42 [§ 54–317] (Burns [Code Ed.] 1973); Mich.Stat.Ann. § 22.13(6a), M.C.L.A. § 460.6a, (Callaghan 1974 Supp.). Under Mich.Stat.Ann. § 22.13(6) (1970), M.C.L.A. § 460.6, municipally-owned utilities are not subject to the jurisdiction of the Michigan Public Service Commission. Therefore, it is not clear on the face of the Michigan statutes whether the municipally-owned, Michigan customers of I & M could increase their rates retroactively.

4. The estimated cost to I & M's municipal customers for the six-month period 14 July 1972 through 12 January 1973 is $2,601,951. Affidavit of Fred R. Saffer, 26 February 1974, attached to IMMDA Suggestion for Rehearing En Banc.

5. In an affidavit attached to the IMMDA Suggestion for Rehearing En Banc, the Chairman of the Board of Public Works of Fort Wayne, Indiana, represented:

That in the event the Court's opinion remains unmodified with respect to requiring that Indiana & Michigan Electric Company's June 13, 1972, rate filing should become effective as of July 14, 1972, the sum required to be paid for the period of July 14, 1972, through January 13, 1973, will amount to approximately Four Hundred Seventy Thousand Dollars ($470,000.00), the payment of which will cause considerable hardship to the City of Fort Wayne. The City will be unable to adequately maintain its system as by law required as a direct result of being required to make such payment. The City cannot recover this $470,000 payment since the City's rates were not increased for this item and cannot be increased retroactively.

That if the Court's opinion remains unmodified, the impact on the financial condition of the City of Fort Wayne's City Light and Power Utility will be extremely detrimental in that said City will have to absorb the increased rates without having the ability to raise its retail rates to provide for these additional past costs.

of the Federal Power Act [6] and is directly tied to the exercise of the Commission's suspension power. Under section 205(e), if the Commission suspends a filing utility's rates and orders hearings on their justness and reasonableness, if those hearings overrun the suspension period, and if the filed rate increases are found unreasonable, the Commission may "by further order require [the filing] public utility or public utilities to refund, with interest, . . . such portion of [the] increased rates or charges as by its decision shall be found not justified."

Under our main opinion, which renders the Commission's 11 August 1972 suspension order a nullity, the Commission's hearings on the reasonableness of I&M's rates cannot rest on the authority of section 205(e), but rather on section 206(a), and thus the Commission does not have the correlative power to order refunds pursuant to section 205(e).[7] Consequently, the Commission's hearings can continue only under the authority of section 206(a), and this unambiguously provides that "the Commission shall determine the just and reasonable rate . . . to be *thereafter* observed and in force, and shall fix the same by order." [8] The Supreme Court has interpreted this language as precluding the Commission from ordering refunds, even when it determines that the rates in effect are unjust and unreasonable.[9] Under our main opinion, then, I&M's customers would be forced to pay possibly excessive rates from 13 January 1973 until the conclusion of the Commission's ongoing hearings without any prospect of receiving refunds of the excessive amounts paid.

Our concern about the liability of I&M's customers for retroactive rate increases, and payment by those customers of possibly unreasonable rates without right to refunds, is intensified by the fact that the Commission explicitly found in its 11 August 1972 order that I&M's filed rates may be unjust or unreasonable. The Commission stated:

The proposed rates and charges . . . have not been shown to be justified and may be unjust, unreasonable, unduly discriminatory, or preferential, or otherwise unlawful. It has also been alleged that I&M's proposed tariff changes are contrary to the economic stabilization program and antitrust policies and that interchange of energy should be provided for. It is necessary and appropriate in the public interest and in carrying out the provisions of the Federal Power Act that the Commission enter upon a hearing concerning the lawfulness of the rates, charges, classifications, services, and other provisions contained in I&M's proposed FPC Electric Tariff, and the use thereof deferred as hereinafter provided.[10]

Thus, the strong potential that hardship to I&M's customers could result from our main opinion is compelling.

Moreover, the equitable stake of I&M in our main opinion is not significant. I&M sought from the Commission no greater relief than our modified order now grants. In its application for rehearing before the Commission, I&M requested that the Commission

[i]ssue a supplemental order modifying ordering paragraph (C) of its August 11, 1972 Order in this proceeding, so as to provide that I&M's

---

6. 16 U.S.C. § 824d(e) (1970).

7. *See* note 35 and accompanying text of the 14 February 1974 opinion in this case.

8. 16 U.S.C. § 824e(a) (1970) (emphasis supplied).

9. FPC v. Sierra Pac. Power Co., 350 U.S. 348, 353, 76 S.Ct. 368, 100 L.Ed. 388 (1956); Montana-Dakota Util. Co. v. Northwestern

Pub. Serv. Co., 341 U.S. 246, 254, 71 S.Ct. 692, 95 L.Ed. 912 (1951). *See also* Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. 378, 389, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959) (Natural Gas Act § 5, 15 U.S.C. § 717d (1970)); FPC v. Hope Natural Gas Co., 320 U.S. 591, 618, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (Natural Gas Act § 5).

10. Joint App. at 164.

proposed rate schedules are suspended for five months beginning July 14, 1972 and their use deferred until December 14, 1972 . . . . [11]

By modifying our original order in the manner set out above, we eliminate the potential for hardship to I&M's customers and we accord I&M precisely the relief it sought from the Commission. The equities clearly dictate that we reinstate the suspension of I&M's rates for the period from 14 July 1972 through 13 December 1972, and restore to the Commission its power under section 205(e) to order refunds of any amounts paid by I&M's customers after 13 December 1972 that the Commission finds excessive.

## II. *The Court's Equity Powers*

 A court sitting in review of an administrative agency is vested with equity powers which it may employ in a manner defined by the Supreme Court in Ford Motor Co. v. NLRB: [12]

> [W]hile the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements.[13]

By our excercise of equity powers herein, we are "adjust[ing] [our] relief to the exigencies of the case in accordance with the equitable principles governing judicial action." In so doing, we are acting, we believe, "within the bounds" of the Federal Power Act; indeed, our main opinion promotes the Act by confining the Commission to its statutory authority, and this supplemental opinion is designed to advance the policies and procedural safegards of section 205 of the Act.[14]

The Supreme Court's decision in United States v. Morgan [15] is instructive here. Under the authority of the Packers and Stockyards Act [16] the Secretary of Agriculture had declared the schedule of maximum rates charged for stockyard services unlawful and prescribed a new, lower schedule of rates. Stockyard companies filed suit in District Court, which temporarily restrained the Secretary's order on condition that the stockyard companies deposit the amounts received in excess of the Secretary's prescribed rates with the clerk of the court. Ultimately, the Supreme Court held the Secretary's order invalid because the Secretary had failed to accord the stockyard owners the full hearing to which they were entitled under the Act.[17] On remand the District Court ordered that the fund accumulated by the clerk during the pendency of the suit be returned to the stockyard owners. The Supreme Court reversed. It directed the District Court to hold the fund that it had collected until the Secretary rendered a decision, after full hearings, on the lawfulness of the stockyard rates. If the Secretary again found the old rates unlawful, the District Court was instructed to distribute to stockyard customers the difference between the old rates and the lawful rates. The Court's basic rationale was as follows:

> Congress having by the Packers and Stockyards Act established the public policy of maintaining reasonable rates

11. *Id.* at 176. *See* note 34, main opinion, second paragraph.

12. 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221. (1939).

13. *Id.* at 373, 59 S.Ct. at 307.

14. 16 U.SC. § 824d (1970). The policy expressed in section 205(a) is to promote just and reasonable rates. *See* Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. 378, 388, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1958) (Nat-

ural Gas Act). The procedural safeguards provided by section 205 include the Commission's suspension and refund powers. *See* text accompanying notes 6–7 *supra*.

15. 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939).

16. 7 U.S.C. §§ 181–229 (1970).

17. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938).

for stockyard services, and having prohibited and declared unlawful any unjust or unreasonable rate, a court of equity should be astute to avoid the use of its process to effectuate the collection of unlawful rates . . . .[18]

The Court so held although it conceded that the Secretary could prescribe lawful rates only for the future and could not act with respect to charges collected in the past.[19] It reasoned that the Secretary had already found the stockyard rates unlawful, although he had done so in a procedurally defective manner. If the Secretary subsequently decided to reaffirm his earlier decision through proper procedures, he could not directly order refunds of the excessive amounts paid by stockyard customers in the past. However, such a decision would justify restitution to the customers of the amounts held by the clerk of the District Court. Similarly, we have found an order of the Commission invalid on the basis of a procedural defect (untimeliness). But in order to advance the Federal Power Act's policy of maintaining just and reasonable rates, we have provided that refunds to the filing utility's customers will be appropriate if the Commission subsequently makes definite its earlier finding that I&M's filed rates may be unlawful by so holding in a final decision.

Finally, we are not "intruding upon the administrative province" by our actions herein. Our denial to I&M of retroactive relief for the period 14 July 1972 through 13 December 1972 is not an infringement upon the Commission's exclusive suspension power.[20] The Commission explicitly determined that suspension was appropriate but failed to issue its suspension order in a timely fashion. Nor are we interfering with the Commission's statutory role as the sole body responsible for determining whether an electric utility's filed rates are just and reasonable. We have not relieved I&M's customers of the burden of paying I&M's filed rates. We have merely provided that if the Commission subsequently determines that the filed rates are unjust or unreasonable, it may order I&M to refund the excess amounts paid by its customers.[21] Thus, we are

18. 307 U.S. at 194, 59 S.Ct. at 801.

19. *Id.* at 189–190, 59 S.Ct. 795.

20. As recognized by this court in Pennsylvania Gas & Water Co. v. FPC, 150 U.S.App.D.C. 151, 463 F.2d 1242 (1972) (Natural Gas Act § 4(e), 15 U.S.C. § 717c(e) (1970)).

We may distinguish the instant case from United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and Arrow Transp. Co. v. Southern Ry. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), which interpreted the suspension provision of the Interstate Commerce Act, § 15(7), 49 U.S.C. § 15(7) (1970). In *Arrow*, the Supreme Court held that the District Court had infringed upon the exclusive suspension power of the Interstate Commerce Commission when it enjoined implementation of a filed rate schedule after the statutory seven-month suspension period had expired. The Court endorsed the following statement by the Fifth Circuit, which had reversed the District Court's decree:

Congress, in its wisdom, has fixed seven months as the maximum period of suspension. It seems clear to us that if the courts extend that period, they are in effect amending the statute and that is a matter beyond their power.

372 U.S. at 662, 83 S.Ct. at 986, *quoting* 308 F.2d 181, 186 (1962). In *SCRAP* the District Court enjoined collection of railroad freight surcharges despite the fact that the ICC had denied requests to suspend the surcharges for the statutory seven-month period under section 15(7). The Supreme Court reversed, noting that the District Court's "injunction constitutes a direct interference with the Commission's discretionary decision whether or not to suspend the rates." 412 U.S. at 692, 93 S.Ct. at 2418. In the case at bar, our denial of retroactive increases to I&M for the five-month period from 14 July 1972 through 13 December 1972 does not extend the statutory five-month suspension period as was the case in *Arrow*. Moreover, our order does not interfere with the Commission's "discretionary decision whether or not to suspend"; rather, it gives effect to the Commission's decision that suspension was appropriate.

21. *Cf.* United States v. Morgan, 307 U.S. 183, 198, 59 S.Ct. 795, 83 L.Ed. 1211 (1939); Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 231 (8th Cir. 1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971).

convinced that our exercise of equity powers here promotes the policy of the Federal Power Act without violating the terms of the Act or infringing upon the exclusive domain of the agency charged with implementing the Act.

Our decision draws support from Mississippi River Fuel Corp. v. FPC,[22] in which the Third Circuit held that the Commission had acted outside its authority by summarily rejecting the filing utility's rate schedule without a hearing. This rejection, the court found, violated the procedural requirements of sections 4 and 5 of the Natural Gas Act,[23] which are virtually identical to sections 205 and 206 of the Federal Power Act. The court ordered that the filed rates be given immediate effect, but "subject to the right of the Commission forthwith to direct and give notice of a hearing upon the new schedules and to safeguard customers of petitioner in the payment of the new tariffs pending the outcome of such hearing by requiring petitioner to file such bond as is contemplated and authorized by Section 4(e)." The court thus permitted the Commission to proceed with hearings on the justness and reasonableness of the proposed rates under section 4(e) (the counterpart in the Natural Gas Act to section 205(e) of the Federal Power Act), *with full authority to order refunds*, despite the fact that the technical effective date of the filing utility's new rates had long since passed.[24]

The filing utility subsequently moved to modify the court's order by making its rate filing effective retroactively to 1 June 1952, or 31 days after the date of filing. The court denied the motion, thus in effect imposing a *de facto* suspension of several months on the filed rates. The court justified its decision by reasoning that granting the retroactive relief requested (1) would force the filing utility's principal customer "to pay additional retroactive charges of about $3,000,000 *for gas it already has resold to its own customers on the basis of [the filing utility's] existing rate to it*"[25] and (2) would fly in the face of "an affirmative though legally misconceived rejection of [the] proposed rate increase by the administrative body which had jurisdiction over the subject matter."[26] In the instant case, we have justified our modified relief herein in part on the basis that (1) granting I&M fully retroactive relief would impose substantial, irrecoverable costs on I&M's customers,[27] and (2) the Commission has affirmatively found that I&M's rates may be unjust or unreasonable, although it implemented its finding in a procedurally defective manner.[28] Therefore, we believe our exercise of equity powers can rest on the authority of *Mississippi River Fuel* as well as United States v. Morgan.

## III. *Conclusion*

For the reasons stated herein, we grant the petitions for rehearing and modify our main opinion of 14 February 1974 in the manner set out in the third paragraph of this opinion.

So ordered.

---

22. 202 F.2d 899 (3d Cir.), cert. dismissed, 345 U.S. 988, 73 S.Ct. 1138, 97 L.Ed. 1397 (1953).

23. 15 U.S.C. §§ 717c & 717d (1970).

24. The rates were filed on 30 April 1952, with a proposed effective date of 1 June 1952. The court issued its main opinion on 9 February 1953.

25. 202 F.2d at 904 (emphasis supplied).

26. *Ibid.*

27. Notes 2–5 *supra* and accompanying text.

28. Text accompanying note 10 *supra*. *See* United States v. Morgan, discussed in text accompanying notes 15–19 *supra*; Atlantic Coast Line R.R. Co. v. Florida, 295 U.S. 301, 311–312, 55 S.Ct. 713, 79 L.Ed. 1451 (1935).