**BOSTON EDISON COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Towns of Norwood, Concord and Wellesley, Massachusetts, Municipal Light Board of Reading, Massachusetts, Intervenors.

**BOSTON EDISON COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

The Towns of Norwood, Concord et al., Municipal Light Board of Reading, Massachusetts, Intervenors.

No. 75–2123, 76–1392.

United States Court of Appeals, District of Columbia Circuit.

Argued 14 Dec. 1976.

Decided 17 May 1977.

Rehearing and Rehearing En Banc Denied 27 June 1977.

---

George F. Bruder, Washington, D.C., for petitioner.

Joseph G. Stiles, Atty., F. P. C., Washington, D.C., for respondent; Drexel D. Journey, Gen. Counsel, F. P. C., Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol., and Allan M. Garten, Atty., F. P. C., Washington, D.C., were on the brief; Thomas M. Walsh, Atty., F. P. C., Washington, D.C., also entered an appearance.

Charles F. Wheatley, Washington, D.C., was on the brief for intervenors Towns of Concord, Norwood and Wellesley, Mass.; Grace Powers Monaco, Washington, D.C., also entered an appearance.

Robert C. McDiarmid, Washington, D.C., was on the brief for intervenor Municipal Light Board of Reading, Mass.

Before ROBB and WILKEY, Circuit Judges and GESELL,[*] District Judge for the District of Columbia.

WILKEY, Circuit Judge:

This proceeding consolidates two petitions for review of respondent's orders[1] emanating from petitioner's S–4[2] rate filing. The legal issue posed is whether after a wholesale electrical rate application has been filed, presenting cost data deemed current by then-existing regulations, the Commission by subsequent general regulation can declare the data stale and reject the application.[3]

## I. PROCEDURAL BACKGROUND

On 27 August 1975 petitioner filed its S–4 rate schedule for a rate increase conforming to the regulations established by the FPC in 1973, Order No. 487,[4] by which utilities were required to supply cost-of-service data for two periods, Period I and Period II, as opposed to one twelve-month period formerly required. For Period I actual unadjusted system cost data was to be supplied covering "the most recent twelve consecutive months for which actual data are available."[5] For Period II estimated cost-of-service data was to be furnished for

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The orders under review in No. 75–2123 are dated 24 September 1975 and 14 November 1975; in No. 76–1392 they are dated 20 February 1976 and 12 April 1976.

2. The S–4 rate is a wholesale electric power rate, the rate applicable to intervenors.

3. Unfortunately, this opinion is replete with recitation of dates, order numbers, and calculations of periods of time. It must be realized that the argument over these rate filings revolves around precisely these matters.

4. 50 F.P.C. 125 (1973), rehearing denied, 50 F.P.C. 736 (1973), 18 C.F.R. § 35.13(b)(4)(iii).

5. *Ibid.*

"any twelve consecutive months beginning after the end of Period I but not later than the date the rates are proposed to be effective." [6] In compliance with Order No. 487, petitioner presented data on calendar year 1974 for Period I and estimated data on calendar year 1975 for Period II. The Period I data was thus *less than eight months old* when the rate was filed.

By letter dated 24 September 1975 the respondent FPC notified petitioner that its S–4 rate filing was deficient because the Period I data provided was *out-of-date,* and advised that data should be submitted for a period ending no earlier than *four months,* prior to the filing date. On 11 November 1975 the four-month period was changed by the FPC to no more than seven months prior to the new tender of filing. Then on 14 November 1975 the FPC issued an order denying rehearing to petitioner and reiterating that Period I data which is eight months old when filed is "too stale to be the most recently available as required by Section 35.13(b)(4)(iii). . . ."

In defense of its actions re petitioner's filings the FPC asserts that since issuance of an order on 10 September 1975 in *Interstate Power Co.,*[7] the FPC had not accepted filings containing Period I data which were more than seven months old. We accept this assertion as factually correct for the purpose of this decision; the critical feature, however, is that the asserted watershed date of 10 September 1975 is *subsequent* to petitioner's rate filing on 27 August 1975, although prior to the FPC rejection of the rate filing on 24 September 1975. It may also be noted that the FPC letter of 24 September 1975 decreed a *four-month* freshness standard, not the seven months now asserted.

The above filing and rejection became the subject of appeal No. 75–2123 in this court. No. 76–1392 arose out of petitioner's revised S–4 rate filing.

On 23 January 1976 petitioner filed a revised S–4 rate schedule containing Period I data which were less than four months old when filed, as petitioner had been specifically advised to do, requested an effective date of thirty days after submission, and further requested that if a suspension period was to be imposed, it be limited to four days so that it would end on 27 February 1976, which is the date on which the original rejected rate filing would have become effective if the FPC had accepted and suspended it for the maximum allowable period of five months.[8] FPC orders of 20 February and 12 April 1976 accepted the 23 January 1976 filing, provided for Commission consideration by hearing, but suspended the rate increase for five months until 24 July 1976.

The practical question ultimately to be answered in dollars and cents is thus what rate petitioner is entitled to charge its customers for the period 27 February to 24 July 1976.

## II.  DISCUSSION

The regulation promulgated by Order No. 487 in 1973 responded to a need by the Federal Power Commission for more current cost-of-service data in ratemaking proceedings in a period when inflationary forces were causing an upward spiraling of fuel and other costs. Order No. 487 contained the following:

> Upon further review of the make-up of Period II, we conclude that that period should be made more flexible by designating it as any twelve consecutive month period beginning after Period I but no later than the date on which the new rates become effective. This change will permit companies to file costs projected on a *calendar year basis* if they so desire.[9]

The FPC concedes that utility companies interpreted Order No. 487 to allow Period I cost-of-service data to be filed on a calendar

---

**6.**  *Ibid.*

**7.**  Docket No. ER–76–70.

**8.**  16 U.S.C. § 824d(e).

**9.**  50 F.P.C. 125 at 128 (emphasis added).

year basis, following prevalent bookkeeping practices.

On 10 September 1975 in *Interstate Power Co., supra,* respondent for the first time rejected calendar year data for Period I as being stale. Fourteen days later petitioner's S–4 rate filing was rejected and subsequently the filings of other utility companies were accorded the same treatment.[10]

On 3 September 1975 the Commission issued a Notice of Proposed Rulemaking [11] to amend Section 35.13(b)(4)(iii), the regulation previously amended in 1973 by Order No. 487, from which the following is quoted:

> In its present form, the provision requiring a cost of service statement for twelve months of actual experience does not specify how current the actual data must be. Our experience indicates that the modifying phrase, "for the most recent twelve consecutive months for which actual data are available," is ambiguous and has given rise to varying constructions.

Recognition was made of the fact that companies which used a calendar year basis of bookkeeping had filed cost-of-service data on a calendar year basis and that this has resulted in less recent data than if the company had utilized a split-test-year cost of service. The notice further stated, "We believe the proposed change should develop a standard of uniformity in the filing requirements . . . and more accurately project future conditions." This notice of rulemaking was, like the order in *Interstate Power Co., supra, subsequent to* petitioner's rate filing but prior to the FPC rejection of those rates.

Order No. 545, issued 20 January 1976,[12] amended the regulations to provide that a period of no more than seven months separate the end of Period I and the date of

tender for filing. Referring to the end of the period of actual cost data, Order No. 545 acknowledged, "The present regulations are unspecific as to this time interval."

Aside from the regulations' admitted lack of specificity, it is readily apparent that after the 1973 amendment calendar year cost-of-service data for Period I had been customarily received by the FPC in relation to rate increase filings. By 3 September 1975 the FPC realized stale data was frustrating the purpose of having the data filed, and so launched upon a Proposed Rulemaking proceeding to correct its own ineffective regulations.

■ So we come to the legal issue originally posed, which somewhat restated is, whether the Commission was acting within its authority in rejecting a rate filing already pending on 3 September 1975, which had been filed pursuant to then effective regulations. We think not.

A similar situation was presented in *Golden Holiday Tours v. Civil Aeronautic Board,*[13] in which the Board had rejected a tour prospectus amendment because of a recently adopted regulation that amendments be filed fifteen days before the effective date, following a long-standing flexible practice of permissible filing five days after the effective date. This court held the rejection an arbitrary act and an abuse of administrative discretion, inconsistent with the protection of the traveling public, following a continued pattern of relatively flexible administrative practice.

Petitioner's S–4 rate increase filing must be viewed in the posture of respondent's regulations on 27 August 1975. These regulations permitted cost-of-service data of the most recent *calendar* year for Period I. The applicable law is cogently stated in *Greater Boston Television Corporation v.*

---

10. *Montaup Electric Company,* —— F.P.C. ——, 3 Nov. 1975, Docket No. ER76–46; *Consumers Power Company,* —— F.P.C. ——, 29 Oct. 1975, Docket ER76–45; *Western Power Division, Central Telephone and Utilities Corporation,* —— F.P.C. ——, 5 Nov. 1975, Docket No. ER76–92; *Toledo Edison Company,* —— F.P.C. ——, 31 Dec. 1975, Docket No. ER76–132.

11. Docket RM76–6, 40 Fed.Reg. 42029.

12. —— F.P.C. ——.

13. 174 U.S.App.D.C. 292, 531 F.2d 624 (1976).

*Federal Communications Commission,*[14] "But an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed. . . ."

■ The FPC acted arbitrarily and abused its discretion in applying a standard contrary to its existing regulations. Although an administrative agency is not bound to rigid adherence to its precedents, it is equally essential that when it decides to reverse its course, it must give notice that the standard is being changed, *Columbia Broadcasting System, Inc. v. Federal Communications Commission,*[15] and apply the changed standard only to those actions taken by parties after the new standard has been proclaimed as in effect. We do not pass on precisely what action was needed by the FPC here to make the new standard of seven (or four) months old data effective; we only say that the earliest notice of any change in the standard was subsequent to petitioner's filing, and therefore ineffective as to petitioner.

In applying the appropriate remedy on the authority of *Indiana & Michigan Electric Company v. Federal Power Commission,*[16] we require that petitioner's S–4 rate filing become effective as of 27 February 1976, five months from the filing date of 27 August 1975.

## CONCLUSION

The orders here in issue are vacated and the case remanded for action consistent with this opinion.

*So Ordered.*

---

**14.** 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701.

**15.** 147 U.S.App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971).

**16.** 163 U.S.App.D.C. 334, 341–46, 502 F.2d 336, 343–48 (1974) (Opinion on Rehearing).