584 F.2d 1084
 190 U.S.App.D.C. 103, 28 P.U.R.4th 6
 PUBLIC SERVICE COMPANY OF INDIANA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Indiana Municipal Electric Association et al., Cities of
Crawfordsville et al., and Hoosier Cooperative
Energy Division et al., Intervenors.
PUBLIC SERVICE COMPANY OF INDIANA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Hoosier Cooperative Energy Division et al., City of
Frankfort, Indiana and Indiana Municipal Electric
Association et al., Intervenors.
 Nos. 75-2136, 76-1082.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 21, 1978.
Decided Aug. 22, 1978.
 
 George F. Bruder, Washington, D. C., with whom Howard E. Wahrenbrock, Washington, D. C., was on the brief for petitioner.
 McNeill Watkins, II, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Philip R. Telleen, Atty., Federal Energy Regulatory Commission, Washington, D. C., was on the brief for respondent.
 Sandra J. Strebel and Peter K. Matt, Washington, D. C., were on the brief for intervenor, Indiana Municipal Electric Ass'n et al.
 David S. Richey, Lebanon, Ind., William C. Wise and Robert Weinberg, Washington, D. C., were on the brief for intervenor, Hoosier Cooperative Energy Division et al.
 Wallace L. Duncan and Fredrick D. Palmer, Washington, D. C., were on the brief for intervenors, Cities of Crawfordsville et al.
 Also Drexel D. Journey, Allan Abbot Tuttle and Thomas M. Walsh, Washington, D. C., entered appearances for respondent.
 Before BAZELON, Circuit Judge, and TUTTLE,* United States Senior Circuit Judge for the Fifth Circuit, and ROBB, Circuit Judge.
 Opinion for the Court filed by ROBB, Circuit Judge.
 ROBB, Circuit Judge:
 
 
 1
 Public Service Company of Indiana is a wholesaler of electric power subject to the jurisdiction of the Federal Energy Regulatory Commission. On September 23, 1975 Public Service filed with the Commission a rate increase application together with supporting data. Two weeks later, on October 7, 1975, the Commission rejected Public Service's filing on the ground that certain supporting data were out of date. Public Service was able to refile the increase with more current data on October 30, but the result of the rejection was that the effective date of Public Service's rate increase was delayed from February 24, 1976 to March 31, 1976.[1] Complaining that the Commission has departed unlawfully from its own rules governing the timeliness of the data supporting a rate increase, Public Service brings the case here.
 
 
 2
 Because we think this case is controlled by our decision in Boston Edison Co. v. FPC, 181 U.S.App.D.C. 222, 557 F.2d 845, Cert. denied, 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977), we remand to the Commission for further proceedings consistent with this opinion.
 
 I.
 
 3
 At all times relevant to this appeal the Commission's effective rule on cost data to support rate filings was that set forth in its Order No. 487. The rule required two sets of cost data: Period I data, defined as the "unadjusted system costs for the most recent twelve consecutive months for which actual data are available," and Period II data, defined as estimated cost data for any twelve-month period beginning after the end of Period I and no later than the effective date of the proposed rates. 50 F.P.C. 125, 130 (1973); 18 C.F.R. § 35.13(b)(4)(iii) (1975). This case concerns only Period I data.
 
 
 4
 In its original filing of September 23, 1975 Public Service used calendar year 1974 as the basis for Period I data. In the October 7 letter notifying Public Service of rejection of the filing, the Commission Secretary stated:
 
 
 5
 You provided Period I test data for the period ending December 31, 1974. Under Section 35.13(b)(4)(iii) of the Commission's Regulations, Period I data is required for the most recent twelve consecutive months for which actual data is available. Our review of your filing indicates that because the Period I test data which you provided is out of date, we cannot properly evaluate the propriety of your proposed rate increase. Therefore, please submit actual data for the period ending no earlier than four months prior to the date of filing of the proposed increase. We note that this action is consistent with our Order Rejecting Proposed Rate Increase and Denying Waiver in Interstate Power Company, Docket No. ER76-70, issued September 10, 1975, our letter order in Ohio Power Company, Docket No. ER76-83, issued September 19, 1975, and our Notice of Proposed Rulemaking, Docket No. RM76-6, issued September 3, 1975.
 
 
 6
 R. 2359.
 
 
 7
 Public Service argues that the rejection was improper because the Commission customarily accepted the most recent calendar year data for Period I, and because the Commission had changed its interpretation of the rule without proper notice to the parties affected. Public Service contends that neither the orders in the Interstate Power or Ohio Power cases nor the Notice of Proposed Rulemaking cited by the Commission served to notify it of the Commission's new interpretation of Period I data.
 
 
 8
 The Commission asserts that its determination that Public Service filed stale data for Period I amounted to no more than an application of existing regulations. In the Commission's view, this mere interpretation of its own regulations is entitled to deference by the courts because it is reasonable and consistent with the regulations. See Shell Oil Co. v. FPC, 491 F.2d 82, 88 (5th Cir. 1974). It was apparent, says the Commission, that at some point in 1975 cost data for calendar year 1974 would become so out of date as to be beyond any reasonable interpretation of the regulation requiring submission of the most recent data available; a line had to be drawn and the Commission did so by interpreting the regulation to require Period I data no older than four months.
 
 
 9
 The Commission's analysis is undermined substantially by our decision in the Boston Edison case, Supra. Boston Edison filed a rate increase on August 27, 1975, about a month before the Public Service application. Like Public Service, Boston Edison used calendar year 1974 data for Period I. The Commission rejected Boston Edison's filing on September 24, 1975 because the Period I data were out of date. On review here, we noted that the Commission itself had acknowledged that the regulations were "ambiguous"[2] and "unspecific."[3] The court concluded that "it is readily apparent that after the 1973 amendment (Order No. 487) calendar year cost-of-service data for Period I had been customarily received by the FPC in relation to rate increase filings." 181 U.S.App.D.C. at 225, 557 F.2d at 848. The court ruled that the validity of the
 
 
 10
 rate increase filing must be viewed in the posture of respondent's regulations on 27 August 1975. These regulations permitted cost-of-service data of the most recent Calendar year for Period I.
 
 Id. (emphasis in original)
 
 11
 Thus, in the Boston Edison case we held that the Commission had acted arbitrarily by applying a standard contrary to its regulations as they existed at the time Boston Edison filed its increase. Id. at 226, 557 F.2d at 849.
 
 
 12
 The only difference, then, between the Boston Edison filing on August 27 and the Public Service filing on September 23 is the interval of 27 days in which the Commission took three actions. The question presented here is whether those three actions the Notice of Proposed Rulemaking issued on September 3, and the orders in the Interstate Power case on September 10, and the Ohio Power case on September 19 were sufficient to put Public Service on notice of the Commission's new interpretation of its Period I regulation. We think not.
 
 
 13
 It is beyond cavil that the notice of proposed rulemaking had no effect upon the existing regulations. Applicants cannot comply with every proposal tendered by the Commission; many proposed rules are never adopted or are amended substantially, often because they are too costly or burdensome as provided. If the business of the Commission is to progress in an orderly fashion applicants should not have to abide a rule until the Commission has adopted it.[4]
 
 
 14
 Nor do we think that the orders in the Interstate Power and Ohio Power cases, Supra, were sufficient to effectuate a change in the Commission's practice of accepting calendar year data. In the Interstate Power decision, issued September 10, the Commission did nothing more than recite the requirement in the regulation that the applicant provide "unadjusted system costs for the most recent twelve months for which actual data are available" and conclude that "(w)e are not persuaded that the data for (calendar year) 1974 is the most recent available to Interstate." Interstate Power Co., --- F.P.C. ---, 40 Fed.Reg. 43,076 (1975). Not only does this decision fail to herald a new interpretation of the existing regulations, it does not acknowledge any change at all. As we have said before:
 
 
 15
 (A)n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute.
 
 
 16
 Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852, Cert. denied, 403 U.S. 923, 92 S.Ct. 2233, 29 L.Ed.2d 701 (1971) (footnotes omitted); See Columbia Broadcasting System v. FCC, 147 U.S.App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971). In view of the Commission's practice of accepting calendar year data for Period I[5] we think the order in the Interstate Power case was not sufficient to signal the Commission's change of course. The order in the Ohio Power case is even less explanatory. Virtually identical to the order issued to Public Service, quoted above at --- of --- U.S.App.D.C., at 1086 of 584 F.2d, it issued only four days before Public Service filed its increase. Clearly it was insufficient to put Public Service on notice of any change in Commission policy.
 
 
 17
 The most that can be said for the Commission's actions in these two cases is that they engendered uncertainty where there had been none. We do not mean to say that the Commission could not have changed its interpretation of the regulation without full rulemaking proceedings, but we do hold that if the Commission wishes to do so on a case by case basis, it must provide a "reasoned analysis" that demonstrates a conscious determination to change. Greater Boston Television Corp. v. FCC, supra.[6]
 
 
 18
 The Commission and the intervenors make much of Public Service's ability to refile revised data within 23 days of receiving the rejection. It is argued that this is proof that the September 23 filing did not include the most recent data available to Public Service. Public Service answers reasonably that of course the refiling entailed substantially less effort than the original filing. The revised Period I did not require changes in the proposed rates; or in the Period II data upon which the rates were based, or in the revenue comparisons. Moreover, the format for the development of the data had already been established and Public Service personnel worked on a crash project schedule to get the filing resubmitted before October 30 and thus avoid having to prepare data for a new Period II as well. Therefore, the resubmission within 23 days is not as significant as it seems. But the decisive point is that Public Service was entitled to rely upon Commission practice which clearly established the acceptability of calendar year data filed as late as the succeeding August and September.
 
 II.
 
 19
 The question of remedy remains. Public Service asks that we direct the rate increase be made effective February 24, 1976, the date that it would have been effective had the Commission accepted the original filing and suspended it for four months. See note 1 Supra. The Commission suggests that we remand to permit it to "assess the length of the suspension period in light of the revised effective date." (FERC Brief at 29 n. 22) The intervenors point out that they should not have to bear the added expense to compensate Public Service for the Commission's mistake and urge us to exercise our equity powers to increase the suspension from four to five months which would permit the increase to become effective March 24, 1976. See Indiana & Michigan Electric Co. v. FPC, 163 U.S.App.D.C. 334, 341-42, 502 F.2d 336, 343-44 (1974) (opinion on rehearing), Cert. denied, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975).
 
 
 20
 We conclude the case must be remanded to the Commission. We cannot divine the Commission's reasons for limiting the suspension to four months. It may be that the rejection of the first filing was a factor. It is for the Commission to determine in the first instance whether to adhere to the suspension for four months. Moreover, a remand is necessary in any case, because we are not advised of the status of the hearing to determine whether the rate increase requested is just and reasonable. We do agree with Public Service, however, that should the Commission decide to extend the suspension to the full five months, 16 U.S.C. § 824d(e) (1976), a reasoned analysis should be provided to justify such a Nunc pro tunc determination.[7]
 
 III.
 
 21
 We conclude that the Commission acted arbitrarily in rejecting Public Service's September 23, 1975 filing. The case is remanded to the Commission for such further proceedings as the Commission may require.
 
 
 22
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 The original effective date for the increase was October 24, 1975, 30 days after the filing date. Assuming that the Commission had exercised its power to suspend the rate for four months as it ultimately did the effective date of the rate would have been February 24, 1976. Because of the delay caused by the rejection of the initial filing, Public Service did not resubmit the filing until October 30, 1975. The Commission refused to waive the 30-day notice period, thus the earliest possible effective date for the increase was November 30. The Commission suspended the increase four months until March 31, 1976. R.3490; See 16 U.S.C. § 824d(d)-(e) (1976)
 
 
 [2]
 Notice of Proposed Rulemaking, 40 Fed.Reg. 42029 (1975):
 In its present form, the provision requiring a cost of service statement for twelve months of actual experience does not specify how current the actual data must be. Our experience indicates that the modifying phrase, "for the most recent twelve consecutive months for which actual data are available," is ambiguous and has given rise to varying constructions.
 (footnote omitted)
 
 
 [3]
 Order No. 545, --- F.P.C. ---, 41 Fed.Reg. 3848 (1976)
 
 
 [4]
 This case presents an example of the potential for confusion. As proposed, the rule would have required that Period I data be no older than four months as of the filing date. The order rejecting Public Service's filing required the same. The proposed four-month rule applied to Public Service was offhandedly abandoned by the Commission in its October 29 order in Consumers Power Co., Dkt. No. ER76-45. There the Commission, without even mentioning the proposed rulemaking or its four-month requirement, stated
 Since that action (Interstate Power, September 10), we have consistently refused to accept rate filings containing Period I data which was more than seven months old.
 Id. at 3, 40 Fed.Reg. 52100 (1975).
 Apparently the Commission overlooked its October 7 order in Arkansas Power & Light Co., Dkt. No. ER76-110, in which it rejected a filing for, among other reasons, out of date Period I data less than 6 months old. Ultimately, the Commission settled upon a seven-month rule, having determined that the four-month rule proposed "may be burdensome." Order No. 545, --- F.P.C. ---, 41 Fed.Reg. 3849 (1976).
 
 
 [5]
 Boston Edison Co. v. FPC, supra, 181 U.S.App.D.C. at 225, 557 F.2d at 848
 
 
 [6]
 The Commission argues that a change in interpretation of existing regulations need not comply with notice and comment provisions of the APA. National Ass'n of Insurance Agents, Inc. v. Board of Governors, 160 U.S.App.D.C. 144, 146, 489 F.2d 1268, 1270 (1974). If the point of the argument is that the mere issuance of the proposed rulemaking was enough to effectuate the change in this case, we disagree. The interpretation that these regulations permitted calendar year data had evolved to the point where it was a part of the rule. Under the circumstances, the new interpretation was more a change in the rule than a mere clarification of the Commission's understanding of its terms
 
 
 [7]
 We reject the intervenor's position that we extend the suspension to five months. In the Indiana & Michigan Electric case, Supra, we dealt with the Commission's unlawful suspension of a rate increase for five months. The court exercised equity power to suspend the rate because the considerable hardship a retroactive increase of five months would present to the utility's customers substantially outweighed the utility's interest. Indeed, the utility had requested no more from the Commission than we ordered in our order on rehearing. 163 U.S.App.D.C. at 343-44, 502 F.2d at 345-46. In the present case the equities are far less compelling. The retroactive increase would only be for a month and, significantly, Public Service has not indicated that it would be satisfied with anything less than the full amount due it. Therefore, we decline to exercise the extraordinary power intervenors suggest