**H. S. PHILLIPS et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 77–2324.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1978.

John R. Staffier, Washington, D. C., for petitioners.

Allan A. Tuttle, Sol., Joseph G. Stiles, Atty., Drexel D. Journey, Gen. Counsel, Federal Power Commission, Washington, D. C., for respondent.

Arthur S. Kallow, Joseph M. Wells, Paul E. Goldstein, Chicago, Ill., for Natural Gas Pipeline Co. of America.

Before BROWN, Chief Judge, GOD-BOLD and RONEY, Circuit Judges.*

RONEY, Circuit Judge:

The Federal Energy Regulatory Commission would require nonoperating nonsignatory owners who sell natural gas pursuant to the operator's rate schedule to adhere to that schedule regardless of the exercise of a contractual right to revoke. Accordingly, the Commission rejected unilateral rate in-creases filed by small producers under section 4 of the Natural Gas Act, even though they had properly revoked the authorization to sell under the operator's contract and were no longer bound thereto by state law. We vacate and remand.

Petitioners are nine small producers ["Phillips"], nonoperating owners of small working interests in the Bryans Mill Field, Cass County, Texas.[1] Together they own an interest of approximately 1.9 percent. Shell Oil Company operates the field and owns the major working interest. Shell sells its portion of the gas produced from Bryans Mill to Natural Gas Pipeline Company of America, Inc., the owner of pipeline facilities running from the Southwest to the Midwest, pursuant to a contract dated October 16, 1961. That contract ["Shell-Natural contract"], and all amendments thereto, are on file with the Commission.[2] Shell Oil Co. FPC Gas Rate Schedule No. 261. It provides for a fixed rate with periodic fixed increases and a fixed term. The selling price permitted under the Shell-Natural contract for the time in question was 20.075 cents/Mcf.

On February 6, 1962, Phillips authorized Shell to sell its interests in the gas produced to Natural in interstate commerce "on the same terms and for the same price" subject only to a right of revocation. Accordingly, on June 25, 1962, Shell filed a supplemental application seeking authority to market the nonoperator gas as permitted by the authorization letters. By letter dated July 18, 1962, the Commission amended its previously issued temporary certificate, Docket No.

* Judge Godbold did not participate in the final decision. Pursuant to 28 U.S.C.A. § 46(d), the decision is rendered by a quorum.

1. Petitioners are H. S. Phillips, W. H. Simms, Jr., R. B. Powers, E. B. Armstrong, W. E. Florey, A. C. DeMoss, T. N. Ferrell, E. L. Jeffers, and C. O. Pollard.

2. Pursuant to the provisions of the Department of Energy Organization Act, Public Law 95–91, 42 U.S.C.A. § 7101 et seq. (August 4, 1977), and Executive Order No. 12009, 42 Fed.Reg. 46267 (September 13, 1977) the Federal Power Commission ceased to exist on September 30, 1977, and most of its functions and regulatory re-sponsibilities were transferred to the Federal Energy Regulatory Commission which, as an independent administrative agency within the Department of Energy, was activated on October 1, 1977. Section 705(e) of the Organization Act, 42 U.S.C.A. § 7295, provides for the substitution of the new Commission as a party in cases such as this. For the purposes of this opinion, the "Commission" when used in the context of an action taken or statement made prior to October 1, 1977, refers to the Federal Power Commission; when used otherwise, the reference is to the Federal Energy Regulatory Commission.

CI 62–547, to cover the sale of the nonoperators' gas. Subsequently, on August 13, 1964, a permanent certificate was issued.

In 1975, presumably attracted by the higher small producer base ceiling rate of 35.750716 cents/Mcf, Phillips applied for blanket small producer certificates pursuant to 18 C.F.R. § 157.40 which were granted January 8, 1976. Thereafter, Phillips entered into negotiations with Natural for a higher rate than that provided in the Shell-Natural contract. When these negotiations foundered, Phillips revoked Shell's marketing authorization on January 18, 1977. Simultaneously, Phillips filed with the Commission for unilateral rate increases to 35.-750716 cents/Mcf under section 4(d) of the Act. 15 U.S.C.A. § 717c.[3]

On February 14, 1977, Natural filed protests and petitions to intervene in opposition to Phillips' filings. The Commission rejected Phillips' proposed rate increase in two unreported orders. *H.S. Phillips, et al.,* Docket Nos. CS 76–64, et al. (April 14, 1977 and June 10, 1977). This petition for review followed.[4]

Because the thirty-day waiting period prescribed by section 4(d) of the Natural Gas Act, 15 U.S.C.A. § 717c(d), expired prior to any Commission action, it is necessary at the outset to consider whether the Commission could reject Phillips' rate increases.

Section 4(d) provides that a thirty-day notice of any rate change shall be given by filing new schedules. The Supreme Court has interpreted this provision as "providing . . . for the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review." *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division,* 358 U.S. 103, 114, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958). As a result, in a typical filing, a rate change would become effective after thirty days if no action has been taken by the Commission under section 4(e), 15 U.S.C.A. § 717c(e). Thereafter, the Commission must determine that the rates are unjust under section 5 of the Act, 15 U.S.C.A. § 717d, in order to reject them.

Relying on this procedural framework, Phillips contends that the rate changes became effective thirty days after filing with the Commission.

■ The thirty-day limit does two things: first, it sets the time when the producer can start collecting a rate for a filing properly filed; second, it sets the time within which the Commission must act if it chooses to contest the amount of the rate as unjust and unreasonable. For the filing automatically to be effective after thirty days if the Commission does not act, it must be filed by a producer who has the legal right to file. If the producer has no legal right to file, the filing is a nullity and the Commission may reject it at any time.

3. Section 4(d), 15 U.S.C.A. § 717c(d) provides:
   Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

4. This case arises under section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b) which provides in part:
   *Rehearings; court review of orders*
   (b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. . . .

Construing section 4(d) in a case where a producer sought to change its contract simply by filing a rate change, the Supreme Court stated that the section says "only. that a change *cannot* be made without the proper notice to the Commission; it does not say under what circumstances a change *can* be made." The Court found "no basis in the language of § 4(d) for inferring that the mere imposition of a filing-and-notice requirement was intended to make effective action which would otherwise be of no effect at all." *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 339, 76 S.Ct. 373, 378, 100 L.Ed. 373 (1956). Indeed, if the Commission fails to reject an improperly filed rate, it may be required to do so by a court. *See City of Cleveland v. FPC*, 174 U.S.App.D.C. 1, 525 F.2d 845 (1976) (construing identical section of Federal Power Act, 16 U.S.C.A. § 824d(d): if rate filed deviated from actual agreement of parties, Commission must adjust purported rate notwithstanding expiration of thirty-day period). *Cf. Indiana & Michigan Electric Co. v. FPC*, 163 U.S.App.D.C. 334, 502 F.2d 336 (1974) (Agency regulation under 16 U.S.C.A. § 824d(d): agency's substitution of sixty-day period for statutory thirty-day period invalid).

Therefore, the question to be answered is whether or not Phillips could legally file a rate increase. If it could, the failure of the Commission to act within thirty days means that Phillips is entitled to the rate until the Commission finds that it is unjust and unreasonable under a section 5 proceeding. If Phillips could not legally file, the filing is a nullity and Phillips is not entitled to the higher rate.

The Commission decided that Phillips had no legal right to file the unilateral rate increase because it was bound by the Shell-Natural contract even though it was not a signatory to the contract. The terms of this contract do not admit any variance and Phillips concedes that, if the contract applies, the filing would be improper. It must be determined, then, whether the Commission was correct in its conclusion that Phillips was bound by the Shell-Natural contract so that the purported revocation was ineffective.

■ In effect, the Commission reached its conclusion by creating and applying federal law. While the regulatory scheme of the Natural Gas Act requires such federal law to supervene in special circumstances, as illustrated by a recent Supreme Court decision, federal law in this field remains interstitial. *California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978). In *Southland*, the Court held that interstate dedication of gas by a lessee under a 50-year term lease survived the expiration of lease, even though under state law the lessee could not legally bind the lessors beyond the terms of the lease.

*Southland* resulted from apparent concern over losing gas from the interstate market and was based on policy considerations affecting the steady flow of gas in interstate commerce. Such considerations are not present here. Phillips does not question the fact that its gas is in the interstate market and subject to regulation. Nor is the flow of natural gas affected. The parties could have contracted for the higher rate under the Commission's program of rate regulation. Had there been no contract, Phillips could have filed for the higher rates under the regulation. The Commission concedes the unilateral filing would be appropriate if a contract had expired by its own terms. Indeed, the rate which Phillips seeks has already been determined by the Commission to be a just and reasonable rate for small producers such as these in a section 5 proceeding, 15 U.S.C.A. § 717d. Opinion No. 742–A, Docket No. R–393, 56 F.P.C. —— (7/27/76). The Commission would appear to be foreclosed from opposing the increased rate as unjust and unreasonable under section 4.

■ A legitimate Commission concern is the desire to avoid an excessive number of small producer filings. A regulation which requires a nonsignatory who sells gas pursuant to an operator's gas sales contract to take that contract as it is and does not permit qualifications may be desirable. No

opinion is expressed here as to the propriety of such a regulation other than to say that it cannot be applied retroactively by adjudicatory procedure to Phillips. The Commission has available to it administrative procedures by which such a regulation can be properly adopted with adequate notice and opportunity for hearings.

The Commission's primary concern, as expressed in its order and briefs, is the integrity of the contractual relationship between the parties. Such a concern by itself, however, does not warrant the erection of an extensive federal common law of contracts in the area of natural gas. Nor does it justify a more limited federal law which would determine which contract governs. While the Commission has glossed over these difficulties by terming Phillips' status that of "nonsignatory" to the Shell-Natural contract, such conclusionary linguistic dexterity will not substitute for careful analysis under contract law. Where the parties admittedly could contract for the higher rate, it is especially appropriate to apply the regular contract law which would govern their dealing were there no regulation at all concerning the subject of their contract. The Supreme Court has emphasized that the Act "evinces no purpose to abrogate private rate contracts  . . .." *United*

*Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 338, 76 S.Ct. 373, 378, 100 L.Ed. 373 (1956). See also *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). The circumstances of the instant case do not afford any justification for abrogating the parties' agreements.

There are two different agreements in effect: the Shell-Natural contract and the Phillips-Shell authorization. There is no direct contractual agreement between Natural and Phillips. Phillips has not signed the Shell-Natural contract.

Phillips delivered its gas to Natural through the agency of Shell. In a letter Phillips authorized Shell to sell its share of the gas "on the same terms and for the same price at which you sell your share. . . ." The agreement, however, was "subject to revocation by us, or by any of the undersigned as to his share of said gas, at any time hereafter upon written notice to you. . . ."[5] Shell gave both Natural and Phillips full notice of the limits upon its authority to contract for Phillips, sending each a copy of the authorization letter. Indeed, it was pursuant to Phillips' authorization that the Commission amended Shell's certificate.[6] Therefore, the revoca-

---

**5.** The pertinent clause of the February 6, 1962 letters to Shell reads:

This will serve to authorize you to sell and deliver in interstate commerce our share of the gas produced from said Griffin Unit on the same terms and for the same price at which you sell your share of said gas and to collect the proceeds from the buyer and remit to us monthly for our share thereof. Subject to all applicable and valid state and federal laws and regulations, this authorization is subject to revocation by us, or by any of the undersigned as to his share of said gas, at any time hereafter upon written notice to you at the above address. In the event of such revocation, the undersigned agree to make arrangements to sell their share of the gas from the unit described above to Natural Gas Pipeline Company of America, and you may so notify Natural Gas Pipeline Company of America.

**6.** Shell's letter of June 22, 1962 to the Commission and Natural stated:

Shell files herewith as Supplement No. 2 to its FPC Gas Rate Schedule No. 261 three (3) true copies of eleven (11) letters from non-

operator working interest owners authorizing Shell to file with the Commission for the gas attributable to their interest in the various production units. Also attached as a proposed billing statement and estimate of sales during the first month of service, with deliveries to commence immediately upon receipt of Commission authorization for the proposed sale.

The Commission's authorization stated:

Pursuant to the amendment filed June 25, 1962, [Shell's June 22, 1962 letter], in Docket No. CI62–547, the temporary authorization previously issued to Shell Oil Company by our letter dated January 4, 1962, is hereby amended to include authorization to sell the non-operators' gas, pursuant to the operating agreements submitted on June 25, 1962.

All conditions imposed in our letter of January 4, 1962, will also apply to this additional authorization and your FPC Gas Rate Schedule No. 261 has been redesignated, Shell Oil Company (Operator), et al.

This constitutes all requisite temporary authorization to sell the non-operators' gas, but such authorization is without prejudice to

tion clause must be given effect over the fixed rate clause of the Shell-Natural contract.

■ It is not contended that the revocation was invalid under Texas law, or that Phillips did not follow the procedure provided for termination. Having properly terminated the authorization, Phillips was not under contract and had the right to file for a rate increase. Since no objection was made within the thirty-day period provided by law, Phillips is entitled to the rate until it should be found unjust and unreasonable under a section 5 proceeding.

The orders under review are VACATED and this proceeding is REMANDED with the direction that the Commission accept Phillips' notices of rate change for filing effective thirty days after their original submission to the agency.

ORDER VACATED AND REMANDED.

such final disposition of the certificate application as the record may require. Furthermore, service under this additional authorization may not be discontinued without permission of the Commission issued pursuant to the provisions of the Natural Gas Act.