**PENNZOIL COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

**No. 78–1564.**

United States Court of Appeals,
Fifth Circuit.

March 15, 1979.

Baker & Botts, Stephen M. Hackerman, John M. Young, Pennzoil Co., Houston, Tex., for petitioner.

Robert R. Nordhaus, Gen. Counsel, Howard E. Shapiro, Sol., M. Frazier King, Jr., F. E. R. C., Washington, D. C., for respondent.

Before BROWN, Chief Judge, COLEMAN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

At issue in this case is the validity of an August 25, 1977 order of the Federal Energy Regulatory Commission (FERC) that summarily rejected a portion of a September 23, 1976 Pennzoil rate filing. FERC's order limited the requested increase to that authorized by the 1976 national rate opinions, thereby rejecting Pennzoil's addition of a gathering allowance of approximately 5 cents per Mcf. FERC denied rehearing and reconsideration, and this petition for review followed. We enforce the order of the Commission.

*I*

Since 1930, Pennzoil has been selling to Consolidated Gas Supply Corporation gas produced from numerous leases scattered throughout West Virginia. This gas is sold under Pennzoil's FERC Rate Schedule 10. Some of the gas is produced by Pennzoil, and some of it is purchased by Pennzoil from various small independent producers for resale to Consolidated. At considerable cost Pennzoil operates an extensive gathering system to collect the gas from the widely dispersed leases.

On October 2, 1970, the Commission issued Order No. 411, 44 F.P.C. 1112, which set forth maximum and minimum just and reasonable rates for the Appalachian and Illinois Basin Areas. The order provided that producers selling to nonaffiliated intermediate gas purchasers—which includes the small producers who sell to Pennzoil for

resale to Consolidated—would not be entitled to the minimum price, but stated that

> If there are instances where a producer should receive some relief from unreasonably low contract prices for a sale to an independent intermediate buyer such situations should be brought to our attention through a petition for special relief.

44 F.P.C. at 1127.

Pursuant to this direction, Richter Oil Company, a small West Virginia producer who sells to Pennzoil for resale to Consolidated, filed a petition for special relief on October 30, 1970. Forty-two other similarly circumstanced small producers filed special relief petitions shortly thereafter. These petitions requested relief from contracts with fixed rates ranging from 12 to 15 cents per Mcf at 15.325 psia and sought a minimum rate of 25 cents per Mcf. Pennzoil initially opposed these petitions, asserting that the price it was receiving from Consolidated was such that it could not pay anything more to the small producers.

On July 1, 1971, while the small producer petitions were still pending, Pennzoil and Consolidated amended their contract to (i) increase the base price for the gas to that of the Appalachian area ceiling rate set forth in Order No. 411, and (ii) provide for a gathering allowance to be charged over and above the area ceiling rate. Order No. 411 had set the gathering allowance for the Appalachian area at 1 cent per Mcf at 15.025 psia, but had stated:

> [I]n the event the gathering performed by an individual producer in this area is of such magnitude that special consideration is required then that producer may file a request for special relief.

44 F.P.C. at 1123. The contract amendment provided that the amount of the gathering allowance was to be that authorized by the Commission, but was not in any event to exceed 5 cents per Mcf.[1]

On July 14, 1971, Pennzoil filed the contract amendment with the Commission as a supplement to its Rate Schedule 10. Based on the authority provided by this contract, Pennzoil simultaneously (i) filed for an increase in the base price to the area ceiling rate—an increase from 25 cents per Mcf to 29.58 cents per Mcf at 15.025 psia—and (ii) filed a petition for special relief. The special relief petition cited that portion of Order No. 411 just quoted (44 F.P.C. at 1123), included data showing that Pennzoil's gathering costs were 13.81 cents per Mcf at 15.025 psia, and requested special relief "because of its [Pennzoil's] excess gathering costs[,] to the extent that it will be allowed to collect 35 cents per Mcf at 15.025 psia for gas sold to Consolidated." Pennzoil stated in both of these filings that it would pass on to the small producers any increases granted it.

On August 11, 1971, the Commission accepted the contract amendment for filing and authorized the increase in the base price to the area ceiling rate. On April 6, 1972, the Commission acted on both Pennzoil's and the small producers' petitions for special relief. This order is reported as Area Rates for the Appalachian and Illinois Basin Areas, Docket No. R–371, 47 F.P.C. 994. In the order the Commission first chronicled the history of the pending petitions. It then reviewed the gathering cost data submitted by Pennzoil and found "that Pennzoil has demonstrated that its gathering functions are of such magnitude as to require special consideration." The Commission therefore held that it would "grant the relief requested." Finally, the Commission disposed of the petitions for special relief filed by the small producers. It noted Pennzoil's representation that it would increase the price paid the small producers by the amount of the increase granted it on its sales to Consolidated. The small producers had been receiving 12 to 15 cents per Mcf at 15.325 psia from Pennzoil. Since the increase to the area ceiling rate previously approved (from 25 to 29.58 Mcf at 15.025 psia) had raised by a like amount the price the small producers received from Pennzoil,

---

1. Pennzoil and Consolidated executed a new contract on August 19, 1976. The 1976 contract also provides for a separate gathering allowance to be added to the base price up to the amount authorized by the Commission but does not contain the 5 cent limitation.

and since the granting of Pennzoil's petition to charge a rate 5.42 cents Mcf at 15.025 psia above the area ceiling rate (from 29.58 to 35.0 cents per Mcf) would also raise by a like amount the price the small producers would receive, the Commission concluded that "by granting Pennzoil's petition, we have in effect granted the petitions for special relief filed by [the small producers], because all of them will be receiving at or about 25.0 cents per Mcf at 15.025 psia." The Commission therefore terminated the special relief proceedings filed by the small producers.

This state of affairs—Pennzoil charging Consolidated 35 cents per Mcf and paying the small producers approximately 25 cents per Mcf—apparently continued until the issuance of the national rate opinions by the Commission in 1976.[2] These opinions set national base rates for sales of natural gas, rates higher than the Appalachian area rates set in Opinion No. 411, and also provided for tax, quality, and gathering adjustments. The gathering allowance for the Appalachian-Illinois Basin Areas was set at 1.0 cent per Mcf at 14.73 psia. On September 23, 1976, shortly after the effective date of the national rates, Pennzoil filed notices of changes in rates. The filed rates reflected (i) an increase in the base rate to the national rate; (ii) tax and quality adjustments; and (iii) a "gathering adjustment" of 4.9018 cents per Mcf at 14.73 psia. The filing stated that the gathering adjustment was authorized by the April 6, 1972 order granting Pennzoil's petition for special relief.

By letter order of August 25, 1977, FERC accepted Pennzoil's rate filings but limited the increases to those authorized by the

national rate opinions. FERC rejected that portion of the gathering adjustment above the area rate of 1.0 cent per Mcf, stating: "The April 6, 1972 order granting the underlying special relief rate of 35.0¢ does not provide a basis for the 5.0¢ gathering allowance proposed by Pennzoil." Pennzoil's petition for rehearing was denied, as was its subsequent petition for reconsideration.

## II

Pennzoil's basic argument is that the April 6, 1972 order constituted a determination under § 4 of the Natural Gas Act, 15 U.S.C.A. § 717c, that a gathering allowance of approximately 5 cents per Mcf, in addition to and separate from the applicable ceiling rate, is "just and reasonable" in view of the nature and extent of the gathering services performed by Pennzoil. Since, as provided in § 5(a), 15 U.S.C.A. § 717d(a), a rate previously deemed just and reasonable under § 4 can be reduced only after a hearing and specific findings based on the evidence presented, see State Corporation Commission of Virginia, 1955, 14 F.P.C. 805, the Commission cannot summarily eliminate the 5 cents per Mcf gathering allowance.

In its order denying rehearing, FERC rejected Pennzoil's argument, stating that the April 6, 1972 order "did not purport to authorize Pennzoil to collect a rate 5 cents in excess of any ceiling which might otherwise become applicable at some time in the future based on its gathering operations." Rather, FERC held, the order granted Pennzoil special relief from the then-applicable Appalachian area rate "in the form of a total rate of 35 cents per Mcf." The Appalachian area rate set in Order No. 411

---

2. Just and Reasonable National Rates for Sales of Natural Gas from Wells Commenced prior to January 1, 1973, Docket No. R–478, Opinion No. 749 issued December 31, 1975; modified, Opinion No. 749–A issued February 27, 1976; modified, Opinion No. 749–B issued March 31, 1976; rehearing denied, Opinion No. 749–C issued July 19, 1976; *aff'd in part, set aside in part, Tenneco Oil Co. v. FERC,* 5 Cir., 1978, 571 F.2d 834, *pet. for cert. dismissed,* —— U.S. ——, 99 S.Ct. 43, 58 L.Ed.2d 94. National Rates for Jurisdictional Sales of Natural Gas Dedicated to Interstate Commerce on or After

January 1, 1973, for the Period January 1, 1973 to December 31, 1976, Docket No. RM75–14, Opinion No. 770 issued July 27, 1976; rehearing denied, Opinion No. 770–A issued November 5, 1976; *aff'd sub nom. American Public Gas Association v. FPC,* 1977, 186 U.S.App. D.C. 23, 567 F.2d 1016, *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499. Opinion No. 749–A is codified as § 2.56b of the Commission's General Policy and Interpretations, 18 C.F.R. § 2.56b; Opinion No. 770 as § 2.56a, 18 C.F.R. § 2.56a.

having been superseded by the national rate opinions, the April 6, 1972 order has also been superseded, and Pennzoil cannot file for any rate above that authorized by the national rate opinions. The Commission therefore limited the gathering allowance to 1.0 cent per Mcf at 14.73 psia. FERC also noted that Pennzoil has filed a petition for special relief seeking an increase in the gathering allowance applicable to the sales involved, Docket No. RI77–111, and stated that the "result in this case is without prejudice" to that petition.

Much of the argument presented by both parties has centered on the evidence presented in the proceedings leading to the issuance of the April 6, 1972 order. Pennzoil asserts that the only evidence before the Commission concerned Pennzoil's cost of gathering, so that the Commission must have authorized a gathering allowance. FERC counters that data on the aggregate production costs of the small producers was in the record, as that data was contained in the small producers' petitions for special relief also disposed of by the order, and argues that the order must therefore have authorized an aggregate rate of 35 cents per Mcf based on the aggregate costs of production and gathering. Much argument has also been presented on the nature of special relief proceedings: FERC arguing that special relief can be granted only upon a showing of aggregate costs, and Pennzoil arguing otherwise. Again, the purpose of these arguments is evidently to demonstrate what the Commission *must* have done in its April 6 order.

All this has been very interesting, but what we find most helpful is the order itself. In the opinion accompanying the order, the Commission stated that it was granting "the relief requested"—which was, as stated in Pennzoil's Petition for Special Relief, that Pennzoil "be allowed to collect 35 cents per Mcf at 15.025 psia." In the ordering paragraphs the Commission stated that Pennzoil's petition "is granted to the extent that a rate of 35.0 cents per Mcf . . . shall apply to its sales of natural gas to Consolidated." The Commission also ordered Pennzoil to "increase the price it pays to the small producers" by an amount equal to the authorized increase.

While the issue is not free from doubt, we find it difficult to read this order as authorizing Pennzoil to collect a 5 cent gathering allowance over and above any rate ceiling that might sometime become applicable. The accompanying opinion, though by no means a model of clarity, indicates that the Commission's action was influenced by a number of considerations, including Pennzoil's gathering costs, the data contained in the small producers' petitions for special relief, the then-applicable area ceiling rates, the price the small producers were receiving from Pennzoil, and Pennzoil's representation that it would pass on any increases granted it. It would seem, then, that what the Commission did was what it said it did in the ordering paragraphs—authorize Pennzoil to collect a total rate of 35 cents per Mcf at 15.025 psia instead of the then-applicable area ceiling rate.[3]

In sum, we uphold the Commission's construction of the April 6, 1972 order. That order granted Pennzoil special relief from the then-existing area rate. Since Pennzoil was never granted a 5 cents per Mcf gathering allowance, it was not error for the Commission to reject it.

### III

Pennzoil also argues that the rate filed on September 23, 1976 became effective 30 days after its filing under § 4(d) of the Natural Gas Act, 15 U.S.C.A. § 717c(d),[4]

---

**3.** Now that new and higher rates have become applicable to Pennzoil's sales to Consolidated—see note 2, *supra*; Natural Gas Policy Act of 1978, P.L. 95–621, 92 Stat. 3350—the question naturally arises whether, in view of Pennzoil's overall costs (including its gathering costs), those new rates are just and reasonable. But that question was not before the Commission in the proceedings under review. Presumably,

Pennzoil will have an opportunity in the special relief proceedings now pending before the Commission to demonstrate that the new rates are not just and reasonable.

**4.** This section provides, in pertinent part:
(d) Unless the Commission otherwise orders, no change shall be made by any natu-

and that, therefore, the Commission had no authority to issue the August 23, 1977 letter order in which it eliminated the gathering allowance and thereby summarily reduced the filed rate.

We have recently reviewed the operation of the 30-day waiting period prescribed in § 4(d).

Section 4(d) provides that a thirty-day notice of any rate change shall be given by filing new schedules. The Supreme Court has interpreted this provision as "providing . . . for the earliest effectuation of contractually authorized or otherwise permissible rate changes consistent with appropriate Commission review." *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division,* 358 U.S. 103, 114, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958). As a result, in a typical filing, a rate change would become effective after thirty days if no action has been taken by the Commission under section 4(e), 15 U.S.C.A. § 717c(e). Thereafter, the Commission must determine that the rates are unjust under section 5 of the Act, 15 U.S.C.A. § 717d, in order to reject them.

. . . . .

The thirty-day limit does two things: first, it sets the time when the producer can start collecting a rate for a filing properly filed; second, it sets the time within which the Commission must act if it chooses to contest the amount of the rate as unjust and unreasonable. For the filing automatically to be effective after thirty days if the Commission does not act, it must be filed by a producer who has the legal right to file. If the producer has no legal right to file, the filing is a

nullity and the Commission may reject it at any time.

Construing section 4(d) in a case where a producer sought to change its contract simply by filing a rate change, the Supreme Court stated that the section says "only that a change *cannot* be made without the proper notice to the Commission; it does not say under what circumstances a change *can* be made." The Court found "no basis in the language of § 4(d) for inferring that the mere imposition of a filing-and-notice requirement was intended to make effective action which would otherwise be of no effect at all." *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 339, 76 S.Ct. 373, 378, 100 L.Ed. 373 (1956). Indeed, if the Commission fails to reject an improperly filed rate, it may be required to do so by a court. *See City of Cleveland v. FPC,* 174 U.S.App.D.C. 1, 525 F.2d 845 (1976) (construing identical section of Federal Power Act, 16 U.S.C.A. § 824d(d): if rate filed deviated from actual agreement of parties, Commission must adjust purported rate notwithstanding expiration of thirty-day period). *Cf. Indiana & Michigan Electric Co. v. FPC,* 163 U.S.App.D.C. 334, 502 F.2d 336 (1974) (Agency regulation under 16 U.S.C.A. § 824d(d): agency's substitution of sixty-day period for statutory thirty-day period invalid).

*Phillips v. FERC,* 5 Cir., 1978, 586 F.2d 465, 467–68.

In denying rehearing, FERC rejected Pennzoil's § 4(d) objection. The national rate opinions permit the filing of rates above the ceiling only if the Commission has previously granted special relief. 18 C.F.R. § 2.56a(g).[5] Since it had "never

ral-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public.

**5.** This regulation provides in pertinent part:

(g) Special relief. Prior to the establishment of rates for the 1977–78 biennium . . , any seller seeking to charge a rate in excess of the adjusted national rates . . . or

requesting a change in either the base national rates . . . or the adjusted national rates . . . must file a petition seeking special relief . . . fully justifying the relief sought in light of this order. Such seller may not file for any rate increase which results in a rate in excess of the adjusted national rates . . . unless and until the Commission grants such petition for special relief.

found that a gathering allowance of 5.0 cents was a just and reasonable rate"—and thus had never granted Pennzoil "authority to charge or collect a rate above the applicable national rates"—the Commission reasoned, Pennzoil's filing for a gathering allowance above that authorized by the national rate opinions was "void ab initio." Under *United Gas, supra,* therefore, the Commission concluded that it had properly rejected that portion of the filed rate which related to the 5.0 cents per Mcf gathering allowance.

Pennzoil presents two arguments in opposition to the Commission's reasoning. The first is that the April 6, 1972 order did grant it special relief authorization to charge a rate 5.0 cents per Mcf above the applicable base ceiling rate. We rejected this argument in Part II of this opinion. The second applies only to that portion of the gas which Pennzoil purchases from the small producers and resells to Consolidated. 18 C.F.R. § 157.40(f)(1) provides:

> A large producer . . . may file for the price specified in its related contract for the resale of any natural gas sold to it by a small producer pursuant to the exemption authorized hereunder. In determining whether to accept or suspend such a filing, the Commission shall be guided by the rate level sought and the size of the differential between the purchase and resale price.

Pennzoil argues that its filing, with respect to the gas it purchases from the small producers, was in compliance with this regulation because the filing reflected the price specified in its contract with Consolidated. ■ Pennzoil did not argue the applicability of § 157.40(f)(1) to the Commission. It did present a § 4(d) objection on rehearing, but it grounded the objection solely upon its reading of the April 6, 1972 order. FERC argues that under § 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r, Penn-

zoil's failure to present the § 157.40(f)(1) argument to the Commission precludes it from raising the argument here. Section 19(b) provides that "no objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing." Pennzoil contends that its general § 4(d) objection satisfied the requirements of § 19 such that it can now argue any theory in support of that objection. We agree with the Commission.

An error asserted in the petition for review need not follow precisely the objection asserted on rehearing so long as the Commission was adequately apprised of the petitioner's contentions. *See People of State of California v. FPC,* 9 Cir., 1965, 353 F.2d 16; *Natural Gas Pipeline v. FPC,* 7 Cir., 1941, 120 F.2d 625, *rev'd on other grounds,* 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037. In such circumstances, as noted in *People of State of California, supra,* 353 F.2d at 18, "the purpose of the rule is satisfied." But that does not mean, as Pennzoil apparently contends, that the petitioner can advance any theory in support of a general objection even though that theory was not presented to the Commission. The purpose of § 19 is "to insure that the Commission has an opportunity to deal with the difficulties presented by its action before the reviewing court intervenes." *Rhode Island Consumers Council v. FPC,* 1974, 164 U.S.App.D.C. 134, 143, 504 F.2d 203, 212. Where, as here, the theory now urged in support of the objection was not argued to the Commission and it is not reasonable to expect the Commission to have divined the argument from the general objection,[6] that purpose is not satisfied. For these reasons, we hold that the argument, whatever its merits,[7] cannot be considered here.

ENFORCED.

---

6. This is especially so because another plausible theory was argued to the Commission.

7. We do observe, however, that Pennzoil's argument is by no means air tight. For one thing, neither the 1930 nor the 1976 Pennzoil-

Consolidated contracts appear to set forth a rate to be paid Pennzoil as a gathering allowance except insofar as a gathering allowance has been authorized by the Commission. *See* text and note at note 1, *supra.* Since, under the view we have taken of the April 6, 1972

order, the Commission has never authorized such an allowance, it is somewhat difficult to see how Pennzoil's filing is authorized by § 157.40(f)(1)'s permission to file for the rate specified in the contract for resale.